Having reviewed the competent evidence of record and the positions of the parties, the Full Commission affirms the Opinion and Award of the deputy commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement dated August 26, 1999 and at the deputy commissioner's hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act;
2. An Employer-Employee relationship existed between plaintiff and defendant;
3. At the time plaintiff allegedly contracted her occupational disease, defendant was a duly-qualified, self-insured company with Constitution State Services Company acting as the Servicing Agent.
4. Documents stipulated into evidence include the following:
 a. Stipulated Exhibit #1: Industrial Commission Forms and plaintiff's medical records 85 pages
b. Stipulated Exhibit #2: Form 22 2 pages
 c. Stipulated Exhibit #3: Attendance records of plaintiff since the date of the alleged injury, April 30, 1996 1 page
 d. Stipulated Exhibit #4: Short Term Disability payments from 100% employer-funded plan 1 page
 ***********
Based on the credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On or about April 30, 1996, plaintiff allegedly contracted an occupational disease to her hands, arms, neck and shoulders. At this time, plaintiff had been employed by defendant since late 1993 or early 1994.
2. Plaintiff worked in defendant's danish department and in the muffin department. According to plaintiff's testimony, both jobs required constant use of plaintiff's hands and arms.
3. On April 30, 1996, plaintiff was seen by the company nurse complaining of pain in her left shoulder. Plaintiff began a medical leave of absence from defendant on May 1, 1996.
4. On May 7, 1996, plaintiff was seen by Dr. Greig McAvoy and complained of a several month history of hand pain and more recent shoulder pain. Based upon these complaints, Dr. McAvoy ordered EMG/NCV studies. According to Dr. McAvoy's notes, plaintiff's EMG/NCV studies were normal.
5. On May 28, 1996, Dr. McAvoy's impression was that plaintiff was suffering from cervical radioculopathy on the left. Dr. McAvoy ordered an MRI scan of plaintiff's cervical spine. On June 11, 1996, Dr. McAvoy reported that plaintiff's MRI scan was normal. After examining plaintiff, Dr. McAvoy indicated that plaintiff could return to full duty employment effective June 24, 1996.
6. On June 28, 1996, plaintiff returned to Dr. McAvoy and continued to complain of shoulder pain. Dr. McAvoy performed a subacromial injection, after which plaintiff experienced immediate improvement. Dr. McAvoy released plaintiff to return to work on July 2, 1996.
7. On July 22, 1996, plaintiff returned to Dr. McAvoy complaining of numbness in the left hand. After examining plaintiff, Dr. McAvoy's impression was that plaintiff was suffering from left rotator cuff tendonitis and mild bilateral carpal tunnel syndrome. Dr. McAvoy further indicated that his June 28, 1996, note was still in effect and that plaintiff could return to regular duty work.
8. Despite her release to return to work, plaintiff remained out of work on a leave of absence from July 26, 1996 until April 15, 1997.
9. On multiple occasions between July 12, 1996 and April 14, 1997, plaintiff was seen by Dr. James Bryant at Bryant Family Practice in Rocky Mount. On September 17, 1996, Dr. Bryant referred plaintiff to Carolina Neurology for EMG and NCV studies. According to the Carolina Neurology report of November 22, 1996, plaintiff's EMG/NCV studies were normal with no evidence of carpal tunnel syndrome.
10. On January 31, 1997, plaintiff returned to Dr. McAvoy continuing to complain of left hand and arm pain. According to Dr. McAvoy's notes, plaintiff had negative Tinel's and Phalen's tests and his impression was that plaintiff was suffering from left rotator cuff tendonitis/bursitis. Dr. McAvoy indicated that plaintiff could return to regular duty work.
11. On April 8, 1997, plaintiff returned to Dr. Bryant. After examining plaintiff, Dr. Bryant indicated that plaintiff could return to work on April 14, 1997. Plaintiff actually returned to work on April 15, 1997 and April 17, 1997, but then began another medical leave of absence effective April 18, 1997. Plaintiff last worked for defendant on April 17, 1997.
12. On March 26, 1998, plaintiff was seen by Dr. Richard Moore at Duke University Hospital. After examining plaintiff, Dr. Moore's impression was that Plaintiff was suffering from left subacromial bursitis. Based upon plaintiff's shoulder complaints, Dr. Moore injected plaintiff's left shoulder.
13. On July 29, 1998, plaintiff returned to Dr. Moore indicating that her shoulder problem had resolved but she was now experiencing pain throughout her left hand as well as back pain which radiated down her right leg. After examining plaintiff, Dr. Moore's impression was that plaintiff was suffering from migratory synovitis and he ordered a rheumatologic work-up.
14. On September 17, 1998, Dr. Moore indicated that plaintiff was suffering from rheumatoid arthritis, and he referred plaintiff to a rheumatologist for further evaluation and treatment.
15. On November 6, 1998, plaintiff was seen by Dr. Nicholas Patrone at the Boice Willis Clinic. After examining plaintiff, Dr. Patrone's impression was that plaintiff was suffering from lupus or some other vascular disease. Dr. Patrone also indicated that plaintiff was suffering from early rheumatoid arthritis.
16. On November 30, 1998, Dr. Patrone indicated that plaintiff's current problems "looks more like a rheumatoid arthritis picture."
17. On June 8, 1999, plaintiff returned to Dr. McAvoy with a possible diagnosis of rheumatoid arthritis. Upon examination, Dr. McAvoy noted full range of motion of the upper extremities, no muscle wasting and no objective abnormalities. According to Dr. McAvoy's notes, plaintiff did not have carpal tunnel syndrome.
18. The evidence of record fails to establish that plaintiff has sustained a compensable occupational disease. There is no competent evidence that plaintiff's employment with defendant placed her at an increased risk of developing an occupational disease or caused her to develop an occupational disease. The greater weight of the medical evidence establishes that plaintiff probably has rheumatoid arthritis, or perhaps lupus. Objective medical studies have negated carpal tunnel syndrome, cervical herniated disc, or other abnormality that may be associated with repetitive trauma. There is no evidence that plaintiff's rheumatoid arthritis is related to her employment with defendant. Dr. McAvoy's record dated June 8, 1999, relates that plaintiff told him that her symptoms had been present since her employment with defendant, but Dr. McAvoy advised her that her employment had "no relationship to her symptoms."
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. G.S. §97-86; see Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000); Adams v. AVX Corp., 349 N.C. 676, 680,509 S.E.2d 411, 413 (1998). Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions removed from the ordinary experience of laymen, only an expert witness can give a competent opinion as to the nature of and the cause of the injury. Young v. Hickory Business Furniture, supra; Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Expert opinion that rests on speculation and conjecture is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of an injury or disease. Young v. Hickory BusinessFurniture, supra; Dean v. Carolina Coach Co., 287 N.C. 515. 522.215 S.E.2d 89, 94 (1975).
2. Plaintiff has not proven by the greater weight of the competent evidence that she has sustained a compensable occupational disease. G.S. § 97-53(13). To establish a right to workers' compensation benefits for an occupational disease, the employee must show: (1) the disease is characteristic of individuals engaged in the particular trade or occupation in which the employee is engaged; (2) the disease is not an ordinary disease of life to which the general public is equally exposed with those engaged in that peculiar trade or occupation; and (3) there is a casual relationship between the disease and the employee's employment.Rutledge v. Tultex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983);Hardin v. Motor Panels, Inc., 136 N.C. App. 351, 524 S.E.2d 368 (2000). An employee is required to establish that his condition developed due to causes and conditions which are characteristic of and peculiar to his employment with defendant, but excluding all ordinary diseases of life to which the general public with a similar predisposition as the plaintiff is equally exposed outside of employment. N.C. Gen. Stat. § 97-53(13).Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979). Plaintiff has failed to prove that her employment placed her at an increased risk of developing her disease as compared to members of the general public or to members of the general public with the same predisposition. Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
(1983). Further, plaintiff has failed to establish that the conditions of her employment was a substantial contributing factor to her alleged occupational disease. See Hardin v. Motor Panels, Inc.,136 N.C. App. 351, 524 S.E.2d 368 (2000).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER