CATHERINE P. JARRETT, EMPLOYEE, PLAINTIFF v. McCREARY MODERN, INC., SELF-INSURED, EMPLOYER, AND THE PHOENIX FUND/NATIONAL BENEFITS GROUP, INC., SERVICING AGENT, DEFENDANTS

No. COA03-1328

(Filed 7 December 2004)

**Workers' Compensation— carpel tunnel—causation—evidence sufficient**

There was competent evidence to support the Industrial Commissions' findings and conclusions that plaintiff's bilateral carpel tunnel syndrome was caused by her employment. Although defendant characterized the testimony of plaintiff's expert as speculative, the witness responded with an unequivocal "yes" when asked if plaintiff's employment could or might have caused her injury; "could" or "might" testimony is probative of causation where there is no other evidence showing the opinion to be mere guess or speculation.

Appeal by defendants from opinion and award entered 15 May 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 16 June 2004.

*McGuire Woods, by John J. Cacheris, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Thomas W. Page and Terry L. Wallace, for defendant-appellants.*

ELMORE, Judge.

McCreary Modern, Inc. and National Benefits Group (collectively, defendants) appeal from an opinion and award of the North Carolina Industrial Commission awarding Catherine P. Jarrett (plaintiff) work-

ers' compensation disability and medical benefits for bilateral carpal tunnel syndrome. For the reasons stated herein, we affirm.

An opinion and award was entered on 16 August 2002 by a deputy commissioner denying plaintiff's claim because plaintiff "failed to establish that her condition was characteristic of and peculiar to her employment, that she was at an increased risk of developing the condition, or that her condition was caused by her employment." The deputy commissioner specifically concluded that the testimony of one of plaintiff's treating physicians, Dr. Anthony DeFranzo, that plaintiff's job could or might have caused her bilateral carpal tunnel syndrome was based "on speculation and false assumptions such as [sic] that his testimony was not competent to be considered."

Plaintiff thereafter appealed to the Full Commission. The Commission found as a fact that plaintiff was 55 years old at the time of the hearing before the deputy commissioner and that she began working for defendant McCreary Modern in April 1995. Plaintiff worked as an attach skirt sewer, operating a sewing machine to sew skirts onto furniture covers. Plaintiff worked between seven and eight hours per shift, five or six days per week, with a ten-minute morning break, a thirty-minute lunch break, and a ten-minute afternoon break. A videotape of plaintiff performing her job duties was stipulated into evidence, which plaintiff agreed accurately depicted her job. The process of sewing a skirt onto a furniture cover involved plaintiff picking up the furniture cover, which typically weighed between two and seven pounds; laying the cover and the skirt on the sewing machine, under the needle arm; guiding the cover and skirt through the machine; stapling a ticket to the cover; and throwing the completed product into a bin. Plaintiff spent approximately eight minutes sewing one sofa skirt, and she sewed between 50 and 60 covers per shift.

The Commission further found that on 29 May 2000 plaintiff sought treatment from Dr. Mark McGinnis, complaining of a two-year history of pain in her right hand, wrist, and forearm. Plaintiff also complained of numbness in her right hand but did not then report any left-hand symptoms, and plaintiff did not notify defendants at that time that she needed medical care for a work-related condition. Plaintiff returned to Dr. McGinnis on 13 June 2000, at which time Dr. McGinnis found no muscle atrophy, indicating plaintiff was using her hands normally. Dr. McGinnis released plaintiff to return to work, without restrictions.

The Commission further found that plaintiff returned to Dr. McGinnis on 23 March 2001, this time complaining of pain, numbness, and tingling in both her right and left hands and arms. Dr. McGinnis diagnosed bilateral carpal tunnel syndrome and thereafter performed a right carpal tunnel release on 29 March 2001, followed by a left carpal tunnel release on 26 April 2001. Post-surgery, plaintiff's right-hand symptoms almost completely resolved, but plaintiff continued to experience pain in her left hand, and nerve conduction tests on her left hand yielded abnormal results. Nevertheless, on 27 July 2001 Dr. McGinnis released plaintiff without restrictions. Plaintiff returned to work with defendant McCreary Modern on 6 August 2001, after her job was specifically modified to eliminate any lifting over 10 pounds.

The Commission further found that Dr. McGinnis continued to treat plaintiff through 31 January 2002 for complaints of right arm pain and pain in the fingers of her left hand. After reviewing the videotape of plaintiff performing her job duties, Dr. McGinnis opined that plaintiff's job was not highly repetitive; that it placed plaintiff at a mild risk for developing carpal tunnel syndrome compared with the general public; and that it may have contributed to or exacerbated the development of plaintiff's carpal tunnel syndrome.

The Commission further found that on 13 December 2001 plaintiff sought treatment from a second physician, Dr. DeFranzo, for complaints of pain and numbness in her left arm and hand, for which plaintiff received a cortisone injection. Plaintiff returned to Dr. DeFranzo on 24 January 2002 and reported no significant improvement in her left-hand symptoms. Dr. DeFranzo recommended that plaintiff undergo another nerve conduction study and ultrasound on her left hand, but defendants did not authorize this additional testing. Dr. DeFranzo found plaintiff's right hand to be at maximum medical improvement and assigned an 11% permanent partial impairment rating for her right hand, as well as a 10% permanent partial impairment rating to her right upper extremity, under the American Medical Association (AMA) guidelines. Dr. DeFranzo found plaintiff's left hand not to be at maximum medical improvement but nevertheless assigned a 17% permanent partial impairment rating to her left hand, as well as a 15% permanent partial impairment rating to her left upper extremity.

The Commission further found that Dr. DeFranzo assigned plaintiff permanent work restrictions of light duty, non-repetitive work with a 20-pound lifting restriction when lifting with both hands. By

letter dated 28 January 2002, defendant McCreary Modern informed plaintiff it could accommodate these restrictions. However, by a subsequent letter dated 12 February 2002, defendant McCreary Modern informed plaintiff it had received additional information from Dr. DeFranzo which caused it to conclude that plaintiff's work restrictions could not be accommodated. Dr. DeFranzo did not believe that plaintiff could return to her position as an attach skirt sewer, and plaintiff did not work for defendant McCreary Modern in any capacity after 25 January 2002.

The Commission further found that after reviewing the videotape of plaintiff performing her job duties, Dr. DeFranzo opined that plaintiff's job was highly repetitive, that it exposed her to a higher risk of developing carpal tunnel syndrome than the general public, and that it could have caused her bilateral carpal tunnel syndrome. At his deposition, Dr. DeFranzo testified that he determined from viewing the videotape that plaintiff's job required more than 2,000 hand motions per hour, and that several of these motions were indicated in the development of carpal tunnel syndrome. Dr. DeFranzo testified that in making this determination, he did not actually count the number of hand motions plaintiff made in one full hour.

The Commission determined that the greater weight of the credible record evidence supports a finding that plaintiff's employment was a significant contributing factor in the development of her carpal tunnel syndrome, which the Commission concluded was a compensable occupational disease. The Commission further determined that "[a]s the result of plaintiff's repetitive use of her hands in her work with defendant [McCreary Modern], plaintiff contracted carpal tunnel syndrome[,]" and that as a result of plaintiff's bilateral carpal tunnel syndrome, she was "disabled and was unable to earn wages in her regular employment or any employment for the periods March 23, 2001 through July 27, 2001 and January 25, 2002 and continuing." Accordingly, on 15 May 2003, the Commission entered its opinion and award reversing the deputy commissioner and awarding plaintiff temporary total disability and medical benefits. From the opinion and award of the Commission, defendants appeal.

By their sole assignment of error, defendants contend that there is insufficient competent record evidence to support the Commission's findings and conclusion that plaintiff's employment was a significant contributing factor to the development of her bilateral carpal tunnel syndrome. After a careful review of the record, particularly the deposition transcripts of plaintiff's two treating

physicians, Dr. McGinnis and Dr. DeFranzo, we disagree with defendants' assertion.

It is well settled that this Court's review of an opinion and award of the Industrial Commission is limited to two questions: "(1) whether there is any competent evidence of record to support the Commission's findings of fact; and (2) whether the Commission's findings of fact support its conclusions of law." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371, *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." *Id.*

Section 97-57 of our General Statutes provides that a defendant employer is liable to an employee for onset of an occupational disease if the employee demonstrates that he (1) suffers from a compensable occupational disease, and (2) was last injuriously exposed to the hazards of the disease while employed by the defendant employer. N.C. Gen. Stat. § 97-57 (2003); *see also Hardin*, 136 N.C. App. at 354, 524 S.E.2d at 371. While carpal tunnel syndrome is not among the compensable occupational diseases listed in N.C. Gen. Stat. § 97-53, under N.C. Gen. Stat. § 97-53(13), a disease or condition not specifically enumerated in the statute may nonetheless qualify as a compensable occupational disease if the plaintiff shows that:

> (1) [the disease is] characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) [the disease is] not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there [is] 'a causal connection between the disease and the [claimant's] employment.'

*Rutledge v. Tultex Corp.*, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983) (quoting *Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981)); N.C. Gen. Stat. § 97-53(13) (2003). The burden of proving each element of compensability is upon the employee seeking workers' compensation benefits. *Moore v. J.P. Stevens & Co.*, 47 N.C. App. 744, 750, 269 S.E.2d 159, 163, *disc. review denied*, 301 N.C. 401, 274 S.E.2d 226 (1980).

This Court has previously stated that "[t]he first two elements of the *Rutledge* test are satisfied where the claimant can show that 'the employment exposed the worker to a greater risk of contracting the disease than the public generally.' " *Robbins v. Wake Cty. Bd. of*

*Educ.*, 151 N.C. App. 518, 521, 566 S.E.2d 139, 142 (2002) (quoting *Rutledge*, 308 N.C. at 94, 301 S.E.2d at 369-70). In the present case, the Commission made the following pertinent findings regarding plaintiff's employment and her risk, relative to that of the general public, of developing carpal tunnel syndrome:

> 14. Dr. McGinnis felt that plaintiff's job placed her at a mild increased risk compared to the general public and that her position may have contributed to or exacerbated the development of carpal tunnel syndrome.
>
> . . .
>
> 20. Dr. DeFranzo testified plaintiff was "without question" exposed to a greater risk of developing carpal tunnel syndrome through her employment than members of the general public.

Our examination of the record reveals that findings of fact numbers 14 and 20 are supported by competent record evidence, specifically the deposition testimony of plaintiff's two treating physicians. Dr. McGinnis testified at his deposition that "[i]n my estimation, this particular job may place [plaintiff] at a mildly increased risk [of developing carpal tunnel syndrome] compared to the general population." Moreover, Dr. DeFranzo testified at his deposition that in his opinion, plaintiff's job "without question" exposed her to a higher risk of developing carpal tunnel syndrome than the general public. Since findings of fact numbers 14 and 20 are supported by competent record evidence, they are conclusive on appeal. *Hardin*, 136 N.C. App. at 353, 524 S.E.2d at 371. Because we conclude that these findings in turn support the Commission's conclusion that "[p]laintiff's bilateral carpal tunnel syndrome is not an ordinary disease of life to which the general public . . . not so employed is equally exposed[,]" plaintiff has carried her burden of proving the first two elements of the *Rutledge* test. *Robbins*, 151 N.C. App. at 521, 566 S.E.2d at 142.

Defendants therefore correctly assert in their brief that "this case hinges primarily on the issue of whether there is competent evidence to support the findings and conclusions that Plaintiff's job as a sewer caused her bilateral carpal tunnel syndrome[,]" i.e., the third element of the *Rutledge* test.

An employee seeking workers' compensation benefits can establish the third element of the *Rutledge* test by showing that the job was a *significant* causal factor in, or *significantly* contributed to, the development of the occupational disease. *Locklear v. Stedman Corp.*,

131 N.C. App. 389, 393, 508 S.E.2d 795, 798 (1998). In the context of determining the relationship between workplace exposure and development of an occupational disease, our Supreme Court has stated as follows:

> *Significant* means "having or likely to have influence or effect: deserving to be considered: important, weighty, notable." . . . *Significant* is to be contrasted with *negligible, unimportant, present but not worthy of note, miniscule*, or *of little moment.* The factual inquiry, in other words, should be whether the occupational exposure was such a significant factor in the disease's development that without it the disease would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work.

*Rutledge*, 308 N.C. at 101-02, 301 S.E.2d at 370. "Although it is not necessary for doctors to use the exact wording of 'significantly contribut[ing],' there must be some indication of the degree of contribution such as 'more likely than not' to meet the *Rutledge* test." *Hardin*, 136 N.C. App. at 355, 524 S.E.2d at 372.

Here, the Commission made the following finding of fact regarding the degree to which plaintiff's employment contributed to plaintiff's development of bilateral carpal tunnel syndrome:

> 26. The Full Commission finds the greater weight of competent credible evidence in the record supports a finding that plaintiff's employment was a significant contributing factor the development of plaintiff's carpal tunnel syndrome.

Once again, our examination of the record reveals that finding of fact number 26 is supported by competent evidence, specifically the deposition testimony of Dr. DeFranzo. At his deposition, Dr. DeFranzo testified as follows:

> Q. Dr. Defranzo, I'm going to be asking you some opinion questions. And, in forming your opinions, I understand that you had a chance to review, at some point, all [plaintiff's] medical records, the job description and videotape?

> A. . . . I have reviewed the pertinent records in regard to this problem. And, yes, I reviewed a videotape of her job. And I have kind of a written summary what was in the tape . . .

> . . .

Q. . . . To a reasonable degree of medical certainty, did [plaintiff's] job—could it or might it have caused her bilateral carpal tunnel syndrome?

A. Yes.

. . .

Q. You—did she work—you mentioned a high incidence of carpal tunnel syndrome being repetitive workplaces [sic]. In your opinion, was [plaintiff] working in a repetitive work environment?

A. Yes.

MS. NEEL: Objection.

A. There's no question about that.

Q. And why—

A. By any criterion, this patient had more than 2,000 separate motions an hour. And all the motions that .are the worst motions for causing carpal tunnel syndrome were clearly demonstrated repetitively on that videotape.

Dr. DeFranzo clearly answered in the affirmative when questioned by plaintiff's counsel as to whether plaintiff's job "could" or "might" have caused plaintiff's bilateral carpal tunnel syndrome. Our Supreme Court has stated that "could" or "might" expert testimony is probative and competent evidence to prove causation, where there is no additional evidence showing the expert's opinion to be a guess or mere speculation. *Holley v. ACTS, Inc.*, 357 N.C. 228, 233, 581 S.E.2d 750, 753 (2003); *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000).

We are not persuaded by defendants' characterization of Dr. DeFranzo's opinion testimony as being based on mere guesswork or speculation. When asked whether plaintiff's employment "could" or "might" have caused her bilateral carpal tunnel syndrome, Dr. DeFranzo unequivocally responded "Yes." Moreover, after reviewing plaintiff's job duties, Dr. DeFranzo definitively characterized her job as involving repetitive hand motions, including several of the motions most closely associated with the development of carpal tunnel syndrome, and testified that plaintiff's employment "without question" exposed her to a greater risk of developing the disease than members of the general public not so employed. Finally, Dr. DeFranzo

considered other potential causes of carpal tunnel syndrome and discounted them as possibilities in the present case. *Cf. Young*, 353 N.C. at 231-32, 538 S.E.2d at 915-16 (evidence insufficient to support Commission's findings and conclusions that employee's work-related back injury significantly contributed to her fibromyalgia where treating physician testified that he was frequently unable to ascribe a cause for fibromylagia in his patients, that he was aware from employee's medical history of at least three potential causes for her fibromyalgia other than her work-related injury, and that tests to rule out these other potential causes had not been conducted); *Holley*, 357 N.C. at 233, 581 S.E.2d at 753-54 (same, where employee's first treating physician testified that he could not say to a reasonable degree of medical certainty that employee's work-related accident led to her development of deep vein thrombosis and that "a galaxy of possibilities" could have led to her DVT, and employee's second treating physician testified that she "was unable to say with any degree of certainty" whether employee's work-related injury led to her development of DVT).

We therefore conclude that the Commission's findings and conclusions that plaintiff's bilateral carpal tunnel syndrome was caused by the conditions of her employment were supported by competent evidence.

Affirmed.

Judges McGEE and McCULLOUGH concur.