***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Phillips. The appealing party has shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission rejects the findings of fact found in the Opinion and Award of Deputy Commissioner Phillips and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. April 1, 2004 is the date of the alleged occupational exposure occurring during plaintiff's employment with defendant.
3. An employer-employee relationship existed between plaintiff and defendant on April 1, 2004.
4.On April 1, 2004, Self-Insured (Sedgwick CMS, Servicing Agent) Carrier was the carrier on the risk for defendant.
5. Plaintiff's average weekly wage has been stipulated as $270.15 for the time in question.
6. All parties have been correctly designated and there are no questions as to misjoinder or nonjoinder of parties.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a 44 year-old female with a twelfth grade education.
2. Plaintiff began employment with defendant on February 28, 1981 as a Spinner Operator. Plaintiff's duties as a Spinning Operator included doffing and creeling. Doffing involves wood cylinders that are wrapped and removed form the doffing frame and placed on a doffing truck. Creeling involves splicing an old container of yarn and intertwining it with a new container of yarn. Plaintiff performed this task approximately 76 times per day. Plaintiff was required to take off approximately 75 bobbins per hour and place them on the doff truck during her 12-hour shift. *Page 3 
3. In November 2002, plaintiff began to experience numbness and pain in her left hand. Plaintiff reported her pain to her supervisor, Elmore Locklear, but plaintiff did not associate the symptoms with her job at that time.
4. On January 14, 2003, plaintiff sought treatment from Dr. Glenn Harris, her family physician, who suspected plaintiff had degenerative changes in her hand. Plaintiff testified at hearing that Dr. Harris informed her that her problems were related to her job duties with defendant. However, plaintiff never told her supervisor that she believed her job duties were responsible for her pain.
5.Dr. Harris ordered x-rays, which revealed the existence of degenerative changes. Dr. Harris referred plaintiff to Dr. Paul Rush, an orthopedic surgeon. On February 26, 2003, plaintiff was seen by Dr. Rush at which time plaintiff gave a history of pain and indicated that she had fallen and injured her thumb. Dr. Rush diagnosed plaintiff with Carpal Metacarpal Joint Degenerative Arthritis (CMC). Plaintiff testified that she never told Dr.Rush that she injured her left thumb from a fall in January 2003; however, the Full Commission gives greater weight to the testimony of Dr. Rush and the medical records in evidence.
6. On November 17, 2003, after conservative care failed, Dr. Rush took plaintiff out of work for three weeks. Plaintiff did not receive any temporary total disability benefits, but she did receive one week of short-term disability benefits during this (3) three-week period of time in the amount of ($80.00) eighty dollars.
7. On April 1, 2004, Dr. Rush performed surgery on plaintiff's let thumb. Plaintiff was out of work from April 1, 2004 through November 14, 2004. Plaintiff returned to work without restrictions in November 2004. At the time of the hearing before the deputy commissioner, plaintiff was still employed with defendant in her same job position as a Spinner *Page 4 
Operator with no restrictions. Dr. Rush evaluated plaintiff on January 19, 2005 and assessed plaintiff a 20% permanent partial impairment rating to the left thumb
8. On September 14, 2004, plaintiff filed a Form 18 alleging that her left hand condition was the result of repetitive motion in her job. Defendant filed a Form 19 indicating that it was first notified of plaintiff's allegation on September 17, 2004.
9. Dr. Harris opined that plaintiff's job duties while employed with defendant caused her to develop left thumb CMC. However, Dr. Harris admitted that he is not an expert on the risk factors for the disease and specifically deferred to Dr. Rush on the issue of causation.
10. On November 25, 2003, Dr. Rush completed an attending physician's statement form from defendant indicating that plaintiff's condition was not due to injury or sickness arising out of plaintiff's employment. Dr. Rush testified that he had observed defendant's plant where plaintiff worked and had viewed a DVD of plaintiff performing her job duties as a spinner for defendant. Dr. Rush opined that CMC is the most common form of hand arthritis. Due to the frequency of this type of arthritis, Dr. Rush was not able to say that plaintiff's job was the sole causative factor. Dr. Rush indicated that repetitive motion activities do put the general public at an increased risk of developing arthritis in certain joints, but it is nearly impossible to quantify the degree of contribution. Dr. Rush was not able to say that plaintiff's job duties with defendant were a significant contributing factor in plaintiff's condition, and he indicated that plaintiff's job duties were not a causative factor to her CMC. Dr. Rush could not testify to a reasonable degree of medical certainty regarding the degree of contribution of plaintiff's job duties to her CMC.
11. The undersigned give greater weight to the testimony of Dr. Rush than to the testimony of Dr. Harris. *Page 5 
12. The Full Commission finds that plaintiff's CMC joint arthritis is not related to and was not aggravated by her employment with defendant.
13. The Full Commission finds that plaintiff's employment with defendant did not significantly contribute to and was not a significant causal factor in aggravating plaintiff's CMC.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not present sufficient medical testimony to prove that she suffered an occupational disease. N.C. Gen. Stat. § 97-53.
2. CMC joint arthritis is not an enumerated occupational disease under N.C. Gen. Stat. § 97-53. Therefore, plaintiff must prove that (1) her disease is characteristic of persons engaged in the particular trade or occupation in which she is engaged, (2) her disease is not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation, and (3) there is a causal connection between the disease and her employment. Rutledge v.Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). In order to show a causal connection between the disease and her employment, plaintiff must show that her job was a significant causal factor or that her job significantly contributed to the development of her occupational disease. Jarrett v. McCreary Modern, Inc., 167 N.C. App. 234,605 S.E.2d 197 (2004). In this case, there is insufficient evidence and medical testimony to establish that plaintiff's job duties significantly contributed to or significantly caused her CMC; therefore, plaintiff has failed to establish a causal connection between her CMC and her job duties with defendant. *Page 6 
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation due to an occupational disease is hereby DENIED.
2. Defendants shall bear the costs.
This the 25th day of June 2007.
 S/______________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
S/______________________ LAURA K. MAVRETIC COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER