PATRICIA HARDIN, Employee, Plaintiff-Appellant v. MOTOR PANELS, INC., Employer, Defendant-Appellee, and SELF-INSURED (KEY RISK MGMT.), Carrier, Defendant-Appellees

No. COA98-1587

(Filed 18 January 2000)

**1. Workers' Compensation— causation—carpal tunnel syndrome**

The Industrial Commission did not err in a workers' compensation action by not finding that plaintiff's employment with defendant caused her carpal tunnel syndrome; while plaintiff's treating doctors stated that typing is a known cause for carpal tunnel, competent evidence shows that her job was not a significant contributing factor.

**2. Workers' Compensation— causation—standard**

The Industrial Commission applied the correct standard in determining causation in a carpal tunnel workers' compensation action by requiring that the employment have significantly contributed to or have been a significant causal factor in the disease's development.

**3. Workers' Compensation— occupational disease—diagnosis prior to leaving employment**

The Industrial Commission did not err in a workers' compensation action by not considering evidence which showed that plaintiff was diagnosed with an occupational disease prior to leaving defendant's employment where plaintiff failed to demonstrate a causal connection between her disability and employment. The doctor's records relied upon by plaintiff show only a notation that he suspected that the overuse/repetition injury was connected to her employment; the suspicion of a doctor is insufficient proof of causation.

**4. Workers' Compensation— last injurious exposure—carpal tunnel**

The evidence in a workers' compensation action supported the Industrial Commission's finding that plaintiff was last injuriously exposed to carpal tunnel syndrome while working with subsequent employers.

Appeal by plaintiff from opinion and award entered 2 October 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 6 October 1999.

*Frederick R. Stann for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Thomas Page, for defendant-appellees.*

McGEE, Judge.

This case arises from a workers' compensation claim for carpal tunnel syndrome caused by "repetitive motion work" during plaintiff Patricia Hardin's employment with defendant Motor Panels, Inc.

An opinion and award was entered by a deputy commissioner on 29 October 1997 denying plaintiff's claim because "[p]laintiff's last injurious exposure to the risk of developing or augmenting carpal tunnel syndrome occurred subsequent to her employment with defendant-employer." Plaintiff appealed to the Full Commission. The Commission found as a fact that plaintiff was employed by defendant from October 1988 to April 1993. Her duties included typing reports and correspondence, clerical support, and data entry. She worked approximately eight to ten hours a day. Plaintiff received positive reviews for the quality of her work during the first three years of her employment with defendant. However, in December 1992, she received a negative performance appraisal. Plaintiff presented her letter of resignation to defendant on 15 April 1993 to avoid being terminated for deterioration in the quality of her work. The Commission found that after her resignation, plaintiff applied for and received unemployment benefits totaling $5,125. The Commission also noted that to apply for unemployment compensation a person must be capable of working.

The Commission found that plaintiff was examined by Dr. Robert Jones on 26 April 1993 for complaints of hand and wrist numbness. Dr. Jones diagnosed plaintiff as suffering from overuse tendinitis of the arms. Plaintiff was seen by Dr. Stephen J. Naso, Jr. on 7 May 1993. Dr. Naso determined that plaintiff had negative Tinel's and Phalen's signs. As a result, Dr. Naso diagnosed plaintiff as having tendinitis and released her with limited work restrictions.

The Commission further found that in November 1993, plaintiff began working at Belk department store as a layaway clerk, where she handled packages and ran a cash register. Her duties at Belk aggravated her symptoms of pain and swelling in her hands, and she quit that job after approximately three weeks. Plaintiff next obtained employment as a cashier for Burger King, where she took orders, ran

HARDIN v. MOTOR PANELS, INC.

[136 N.C. App. 351 (2000)]

a cash register, and bagged items. Her duties as a cashier also aggravated her symptoms, and she resigned after three months. Plaintiff next worked as a home health aide for Communication Network Consultants and left that position due to an aggravation of her symptoms as well. Finally, plaintiff was employed at Petro World in September 1995 as a clerk for two weeks. She left her job because of swelling, numbness, and pain in her hands.

The Commission further found that plaintiff sought treatment from Dr. Leonel P. Limonte, a neurosurgeon, on 22 August 1994. Dr. Limonte found that plaintiff had carpal tunnel syndrome. Dr. Limonte referred plaintiff to Dr. Emmett H. Dyer, a neurosurgeon, in June 1995, to evaluate the possibility of surgery. On 21 June 1995, Dr. Dyer performed a bilateral median nerve release. Plaintiff was released without restrictions in July 1995.

The Commission determined that "[p]laintiff has not proven by a preponderance of the competent, credible evidence of record that her job at defendant-employer caused her carpal tunnel syndrome." Furthermore, the Commission found that "[p]laintiff's work subsequent to her resignation from defendant-employer augmented her symptoms of pain, swelling and numbness in her hands and led to the development of carpal tunnel syndrome after she left her employment as a typist."

The Commission determined that "[p]laintiff was last injuriously exposed to carpal tunnel syndrome while working with employers subsequent to defendant-employer." Finally, the Commission found that the "record does not support a finding that plaintiff's employment with defendant-employer significantly contributed to her carpal tunnel syndrome." Therefore, on 2 October 1998, the Commission upheld the opinion and award of the deputy commissioner. Plaintiff appeals.

Our Court, when reviewing an opinion and award of the Industrial Commission, is limited to two questions: (1) whether there is any competent evidence in the record to support the Commission's findings of fact; and (2) whether those findings of fact support the Commission's conclusions of law. *Locklear v. Stedman Corp.*, 131 N.C. App. 389, 393, 508 S.E.2d 795, 797 (1998) (citation omitted). The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings. *Id.*

HARDIN v. MOTOR PANELS, INC.

[136 N.C. App. 351 (2000)]

Under N.C. Gen. Stat. § 97-57 (1991), an employer is liable to an employee for an occupational disease if the employee demonstrates that she (1) suffers from a compensable occupational disease and (2) was last injuriously exposed to the hazards of such disease while employed by defendant. *Rutledge v. Tultex Corp.*, 308 N.C. 85, 89, 301 S.E.2d 359, 362-63 (1983). An occupational disease does not become compensable unless it causes incapacity for work. *Caulder v. Waverly Mills*, 314 N.C. 70, 75, 331 S.E.2d 646, 649 (1985).

The employee seeking workers' compensation benefits bears the burden of proving every element of compensability. *Gibbs v. Leggett and Platt, Inc.*, 112 N.C. App. 103, 107, 434 S.E.2d 653, 656 (1993) (citation omitted). The degree of proof required of a claimant under the Act is the "greater weight" or "preponderance" of the evidence. *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 541-42, 463 S.E.2d 259, 261 (1995), *aff'd*, 343 N.C. 302, 469 S.E.2d 552 (1996).

I.

[1] Plaintiff argues that the Commission erred in failing to find that employment with defendant caused her carpal tunnel syndrome. We disagree.

To establish a right to workers' compensation benefits for an occupational disease under N.C. Gen. Stat. § 97-53(13) (1991), the employee must show: (1) the disease is characteristic of individuals engaged in the particular trade or occupation in which the claimant is engaged; (2) the disease is not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there is a causal relationship between the disease and the claimant's employment. *Rutledge*, 308 N.C. at 93, 301 S.E.2d at 365 (citations omitted). The third element of the test is satisfied if the employment "significantly contributed to, or was a significant causal factor in, the disease's development." *Id.* at 101, 301 S.E.2d at 369-70. For the employment to constitute a "significant contributing" factor, the employee must show that without it the occupational disease "would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work." *Baker v. City of Sanford*, 120 N.C. App. 783, 788, 463 S.E.2d 559, 563 (1995) (citation omitted), *disc. review denied*, 342 N.C. 651, 467 S.E.2d 703 (1996).

Plaintiff was unable to prove that her employment with defendant was a significant contributing cause of her carpal tunnel syndrome.

While her treating doctors did state that typing is a known cause for carpal tunnel syndrome, competent evidence shows that her job was not a significant contributing factor in plaintiff's case.

Plaintiff's diagnosing physician/neurosurgeon was unable to connect plaintiff's carpal tunnel syndrome to her employment with defendant. During direct and cross-examination, Dr. Dyer could not say that plaintiff's former employment with defendant was a significant contributing factor in the development of her carpal tunnel syndrome. Dr. Dyer responded to plaintiff's counsel in the following manner:

> Q. Do you feel comfortable in finding that her work as a typist, as I've defined it to be, in my words, a significant contributing factor, according to my definition?
>
> MR. PAGE: Objection.
>
> THE WITNESS: My opinion would be that it was a contributing factor, and the degree of contribution that her work made I'm not able to say.

Although it is not necessary for doctors to use the exact wording of "significantly contribut[ing]," there must be some indication of the degree of contribution such as "more likely than not" to meet the *Rutledge* test. *Locklear*, 131 N.C. App. at 394, 508 S.E.2d at 798. Here, Dr. Dyer opined only that plaintiff's work as a typist was a "contributing factor" but was unable to specify a degree of contribution.

Plaintiff relies in part on Dr. Naso's testimony that her employment with defendant was a significant contributing factor in the development of her tendinitis. However, Dr. Naso did not testify that her employment was a significant contributing factor to her carpal tunnel syndrome. While Dr. Naso did testify that tendinitis could develop into carpal tunnel syndrome, he also testified that when he examined plaintiff in May 1993, her tendinitis was resolving. Dr. Naso never testified that plaintiff's carpal tunnel syndrome was related to her job with defendant or to the tendinitis. Absent mere conjecture, plaintiff failed to produce any evidence by Dr. Naso relating plaintiff's symptoms at the time he examined her to carpal tunnel syndrome.

Plaintiff argues that Dr. Limonte's testimony provides competent, credible evidence of medical causation. Assuming, *arguendo*, plaintiff's argument is correct, this Court has stated that "the opinion of

the Industrial Commission . . . is conclusive on this Court if it is supported by *any* competent evidence . . . and can only be set aside if there is a complete lack of competent evidence." *Sidney v. Raleigh Paving & Patching,* 109 N.C. App. 254, 256, 426 S.E.2d 424, 426 (1993) (citations omitted) (emphasis added). The testimony of both Dr. Dyer and Dr. Naso supports the Commission's findings and conclusions and satisfies this Court's standard of review.

The competent, credible, medical evidence of record in this matter fails to establish a causal relationship between plaintiff's employment with defendant and her carpal tunnel syndrome. Neither Dr. Dyer nor Dr. Naso testified that plaintiff's job with defendant was a significant contributing factor to the development of her later diagnosed carpal tunnel syndrome. As a result, plaintiff failed to meet all of the requirements of compensable occupational disease, as set forth in the *Rutledge* case. Competent evidence does exist to support the Commission's findings of fact and those findings support its conclusion of law in denying plaintiff benefits. Accordingly, we affirm the decision of the Commission.

## II.

[2] Plaintiff argues that the Commission erred by applying "the wrong standard in its determination of causation by implicitly requiring that the plaintiff's employment be the sole cause of her occupational disease." We disagree. The Commission found that "[t]he majority of the competent, credible evidence of record does not support a finding that plaintiff's employment with defendant-employer *significantly contributed* to her carpal tunnel syndrome." (Emphasis added). The standard employed by the Commission met the third element of the *Rutledge* test requiring a determination that the employment "*significantly contributed to,* or was a significant causal factor in, the disease's development." *Rutledge,* 308 N.C. at 101, 301 S.E.2d at 369-70 (emphasis added). Therefore, we find no error.

## III.

[3] Plaintiff further argues that the Commission erred in its failure to consider evidence which showed that plaintiff was diagnosed with an occupational disease prior to her leaving defendant's employment. We disagree.

Plaintiff bears the burden of proving by the preponderance of the competent, credible evidence that her disability is causally related to her employment with defendant. *Phillips,* 120 N.C. App. at 541-42, 463

S.E.2d at 261. The Commission must weigh this evidence and make specific findings of fact. Our Court may not disturb these findings if there is competent evidence to support them, even if there is contrary evidence. *Hedrick v. PPG Industries*, 126 N.C. App. 354, 357, 484 S.E.2d 853, 856, *disc. review denied*, 346 N.C. 546, 488 S.E.2d 801 (1997). Plaintiff failed to prove by the preponderance of the competent, credible evidence that she was diagnosed with an occupational disease prior to her resignation, which would have demonstrated a causal connection between her disability and employment.

In fact, plaintiff never mentioned to defendant any problems with her hands until after she left her position with defendant. Plaintiff claims that she was discharged from her employment with defendant after she was diagnosed with an occupational disease. However, she did not notify defendant of any problems with her hands until she suspected that she would be discharged. She claimed stress, pressure in the office, and an overwhelming workload caused her poor performance, but never mentioned any problem with her hands. It was due to her continuing poor performance that the decision was made on the morning of 14 April 1993 to terminate her employment. The testimony of Wanda Neal, Human Resource Manager for defendant, under questioning by defendant's counsel shows that during the meeting of April 15 plaintiff did not indicate that her problems at work were related to her hands:

Q: Were any specifics discussed in that meeting regarding any deficiencies in her work?

A. The accuracy of her work was in question, as far as her typing. She had to redo over and over again because of mistakes that were made in typing, and that was the main problem was the accuracy of it.

Q. During this meeting, did she indicate to you that the reason she was having problems was because of pain in her hands?

A. No, sir.

Plaintiff also claims that Dr. Wilson diagnosed her with an occupational disease prior to her discharge. However, Dr. Wilson's records only show a notation that he suspected the overuse/repetitive motion injury was connected to her employment. For there to be a causal connection between the disease and claimant's employment, the employment must significantly contribute to or be a significant causal factor in the development of the disease. *Rutledge*, 308 N.C. at 101,

301 S.E.2d at 369-70. Beyond this one notation, there is no evidence that Dr. Wilson found her employment to be a significant contributing factor to her injury. The suspicion of a doctor is insufficient proof of causation. *Phillips*, 120 N.C. App. at 542, 463 S.E.2d at 262 (evidence is insufficient if it is mere conjecture, surmise, or speculation).

Based on Neal's testimony and *Phillips*, the Commission did not err in finding that plaintiff was not diagnosed with an occupational disease before her resignation from employment with defendant.

IV.

**[4]** Plaintiff argues that the Commission erred in concluding that plaintiff was last injuriously exposed to the risk of developing carpal tunnel syndrome subsequent to her employment with defendant. We disagree.

Assuming a causal link is established between plaintiff's carpal tunnel syndrome and her employment, plaintiff must still prove the last injurious exposure to the hazards of the disease occurred during the course of employment with defendant. *Rutledge*, 308 N.C. at 89, 301 S.E.2d at 363. Our Supreme Court has interpreted N.C. Gen. Stat. § 97-57 as a recognition by the General Assembly that "occupational diseases often develop slowly over long periods of time after exposures to offending substances at successive places of employment," and therefore, we "take the breakdown practically where it occurs—with the last injurious exposure." *Id.* (citation omitted). Only the employer in whose employment claimant was last injuriously exposed to the hazards of the disease is liable for any disability resulting from the occupational disease. *Jones v. Beaunit Corp.*, 72 N.C. App. 351, 353, 324 S.E.2d 624, 625 (1985).

The statutory term "last injuriously exposed" has been defined as "an exposure which proximately augment[s] the disease *to any extent, however slight*." *Rutledge*, 308 N.C. at 89, 301 S.E.2d at 362 (emphasis added). Exposure to substances which can cause an occupational disease can be so slight quantitatively that it could not in itself have produced the disease. *Caulder*, 314 N.C. at 70, 331 S.E.2d at 646.

In *Caulder*, our Supreme Court awarded an employee full compensation for total disability when he was exposed to dust which worsened the obstructive lung disease he had already contracted. *Id.* The Court found that the dust, despite not being known to cause obstructive lung disease, is a substance to which workers in factories

HARDIN v. MOTOR PANELS, INC.

[136 N.C. App. 351 (2000)]

have greater exposure than does the public generally, and that this exposure contributed to his lung condition, at least to a slight degree. *Id.* The *Caulder* Court required only the minimal showing that there was more exposure to dust in the workplace than in the public generally, and that such exposure aggravated a pre-existing condition to any degree, however slight. *Id.*

As defendant argues, like the claimant in *Caulder*, plaintiff suffered injurious exposure while employed in positions subsequent to her employment with defendant. After her resignation from defendant, plaintiff held a variety of other jobs. She was employed at Belk in its layaway department. She next worked for three months as a cashier for Burger King. Afterward, she worked as a home health aide for Communication Network Consultants. Finally, she worked as a clerk at Petro World. Plaintiff worked with her hands in all these jobs, running a cash register, bagging and handling merchandise. Plaintiff admitted under questioning by the deputy commissioner that carpal tunnel syndrome symptoms were aggravated, however slight, by her subsequent jobs:

Q. You testified that you had the same symptoms in 1993 that you've had in 1995 and that you have today; is that not correct?

A. Yes. I didn't go to them looking for medicals until '95.

Q. Why did you go in '95?

A. Because the problem had gotten to the point that I couldn't use my hands any more for much of anything.

Q. You testified it's remained constant; haven't you?

A. That is correct. But there was—I mean, you know, over the three years, yeah. There was some increase in pain, some increase overall that length of time. You know, it had to get a little bit worse.

Furthermore, the medical evidence in the record shows an objective change in plaintiff's symptoms after working at subsequent jobs. Plaintiff testified that she did not seek medical treatment for her symptoms between May 1993 and August 1994. Dr. Naso testified that when he examined plaintiff in May 1993, she had negative Tinel's and Phalen's signs. However, when she was examined by Dr. Limonte in August 1994, fifteen months after her resignation from defendant and after her jobs as a clerk at Belk, a cashier at Burger King, a home

health aide for Communication Network Consultants, and a clerk at Petro World, she had positive bilateral Tinel's and Phalen's signs.

Consequently, the Commission did not err in finding plaintiff was last injuriously exposed to carpal tunnel syndrome while working with her subsequent employers. The evidence in this case support the findings of the Commission. *See Agee v. Thomasville Furniture Products*, 119 N.C. App. 77, 82, 457 S.E.2d 886, 889, (1995), *aff'd*, 342 N.C. 641, 466 S.E.2d 277 (1996).

Affirmed.

Judges LEWIS and JOHN concur.