***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the parties at all relevant times.
3. The defendant is a duly qualified self-insured, with Key Risk Management Services as the servicing agent.
4. Plaintiff's average weekly wage is $422.38, yielding a compensation rate of $281.60
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 41 years old with a high school education.
2. On May 10, 2000, plaintiff began working for defendant as a correctional officer. After completing several weeks of training, plaintiff was assigned to work at Charlotte Correctional Center in Mecklenburg County.
3. Plaintiff's job duties required him to work directly with inmates, keep order in the prison, transport prisoners to medical and other appointments, and secure the gate to the facility.
4. Charlotte Correctional Center was a work release camp with dormitory style housing for the prisoners. Plaintiff was required to go into the dormitories to perform such tasks as shakedowns for contraband, preparing prisoners for transportation, breaking up fights, and generally keeping order.
5. Plaintiff witnessed several episodes of violence in the prison, including prisoners assaulting each other and on one occasion a duty sergeant assaulting a prisoner by "head butting" him in the face.
6. Plaintiff, who was approximately 5'8" tall and 185 pounds, feared for his safety when he was outnumbered by larger inmates. Inmates would continually challenge plaintiff verbally. Plaintiff was not allowed to carry any lethal weapons in the prison. Plaintiff was limited to carrying pepper spray for protection in the prison.
7. On at least one occasion, plaintiff had to transport an unrestrained felon in a van.
8. On at least one occasion, a prisoner threw bodily fluids on the plaintiff. Although plaintiff did not know which specific prisoners had potentially lethal infectious diseases such as HIV, AIDS, and hepatitis, he knew that at least some of the prisoners had these diseases and when the bodily fluids were thrown on him, he did not know whether those fluids were contaminated by an infectious disease.
9. The above-described work conditions and incidents, as well as others described in plaintiff's testimony, resulted in a stressful work environment for plaintiff.
10. Near the end of August, 2000, plaintiff began to have increased symptoms of chest pain and heartburn, and he went to his family doctor who referred him to Dr. Fred Fowler, a gastroenterologist.
11. Dr. Fowler began seeing plaintiff on or about September 29, 2000, and after several examinations and various diagnostic tests, determined that plaintiff was suffering from both acid reflux and esophageal spasm.
12. Dr. Fowler treated the esophageal spasm with the drug Ativan, which impaired plaintiff's judgment. Plaintiff initially took Ativan on a daily basis. While taking Ativan on a daily basis, plaintiff was unable to work.
13. Plaintiff's last day of work for defendant was April 25, 2001.
14. Plaintiff did not see Dr. Fowler for medical treatment between October 22, 2001 and January 13, 2003. On October 22, 2001, plaintiff's condition was reported as "overall he feels that he is doing well except when he challenges himself with a bad diet" and Ativan was not listed among the medications plaintiff was currently taking.
15. In a letter contained in plaintiff's medical records, Dr. Fowler states that plaintiff "was not released for duty before October 23, 2001."
16. During his deposition, Dr. Fowler was asked whether plaintiff was disabled from work during the approximate fifteen-month period between doctor visits from October 22, 2001 through January 13, 2003. In response, Dr. Fowler testified that during this period plaintiff was "doing much better, doesn't require Ativan regularly" and that his "assessment was that . . . when he (plaintiff) was doing well he was able to work, but when he was having a problem he was unable to work." Dr. Fowler testified that plaintiff still had "attacks four to five days out of the month" and that plaintiff was "unable to work these days."
17. Plaintiff likewise testified that he was able to return to work when Dr. Fowler changed his medication from taking Ativan daily to taking it as needed. However, plaintiff did not return to work until January 31, 2004 when he started working for the Wackenhut Corporation. In his job with the Wackenhut Corporation, plaintiff provides security for the Bank of America Corporate Center in downtown Charlotte. Plaintiff earns the same or greater average weekly wage in his current job.
18. Based upon the competent medical evidence of record, the stress of plaintiff's job as a correctional officer placed him at a greater risk of developing acid reflux and esophageal spasm than the general public.
19. Based upon the competent medical evidence of record, the stress of plaintiff's job as a correctional officer significantly contributed to, or was a significant causal factor in, the development of his acid reflux and esophageal spasm conditions.
20. Based upon the greater weight of the competent evidence of record, plaintiff was unable to work in any employment from April 25, 2001 through October 23, 2001 as a result of his acid reflux and esophageal spasm conditions. Plaintiff failed to establish total or partial disability after October 23, 2001.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish an occupational disease under N.C. Gen. Stat. §97-53(13), a claimant must show that the employment exposed him or her to a greater risk of contracting the disease than the public generally. Rutledgev. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the disease's development. Hardin v. MotorPanels, Inc., 136 N.C. App. 351, 524 S.E.2d 368 (2000) (citing Rutledge v.Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983)). Where the condition may have been aggravated but not originally caused by the plaintiff's employment, a claimant must still show that the employment placed him or her at a greater risk for contracting or developing the condition. Futrellv. Resinall Corp., 357 N.C. 158, 579 S.E.2d 269 (2003). Plaintiff has established that he suffers from an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13).
2. Plaintiff is entitled to total disability compensation at the rate of $281.60 per week for the period from April 25, 2001 through October 23, 2001. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable medical conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay temporary total disability compensation to plaintiff at the rate of $281.60 per week for the period from April 25, 2001 through October 23, 2001. Because this compensation has accrued, it shall be paid in a lump sum.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable medical conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
3. A reasonable attorney fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs due the Commission.
This the 29th day of July 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS/mb