* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. Good grounds to reconsider the evidence have been shown. Accordingly, the Full Commission enters the following Opinion and Award, finding and concluding that plaintiff neither sustained an injury by accident nor did she contract a compensable occupational disease.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties hereby agree to stipulate the following records into evidence:
 a) Form 33 dated March 16, 2004, filed with the North Carolina Industrial Commission.
 b) Form 19 dated November 6, 2003 filed with the North Carolina Industrial Commission.
 c) Form 61 denial dated February 10, 2004 filed with the North Carolina Industrial Commission.
 d) Form 33R filed with the North Carolina Industrial Commission on April 21, 2004.
 e) The parties hereby agree to stipulate medical records as part of this claim.
 f) The parties hereby agree to stipulate Plaintiff's Answers to Defendants' First Set of Interrogatories and Request for Production of Documents to Plaintiff.
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on June 9, 1964. She has obtained a GED and worked as a waitress and bartender at Sagebrush for approximately three years.
2. At the hearing plaintiff testified that on May 2, 2003, she was in the kitchen carrying some glasses when she slipped in some butter and fell to the floor. Plaintiff stated that Gerald Blakeney, the assistant manager, helped her up, and that Tracy Rodriguez and Lawrence Grant witnessed the fall. She further testified that after Mr. Blakeney helped her up from the floor, Chuck Dalton, the dishwasher, came around to clean up the broken glass. Finally, Plaintiff testified that Mr. Blakeney told her that the manager, Jay Hartsock, was aware of the incident and that he refused to let plaintiff go to the doctor.
3. Mr. Dalton testified that he did not recall an incident where he had to sweep up broken glass after plaintiff had fallen and that he did not know anything about plaintiff injuring herself at work until he received a subpoena instructing him to appear at the hearing. Mr. Dalton stated that he had no reason to lie and was not afraid of telling the truth.
4. Ms. Rodriquez testified that she did not recall an incident on May 2, 2003 where plaintiff had fallen in the kitchen. Ms. Rodriguez did recall calling plaintiff to ask her what was wrong with her foot and being told, "It just hurts, I don't know what I did to it." Ms. Rodriguez stated that she was not lying at the hearing, had no reason to lie and was not afraid of losing her job with Sagebrush if she told the truth. She also affirmed that her written statement in connection with plaintiff's claim was true and that it remained her statement.
5. Mr. Jay Hartsock, who had been general manager of the Sagebrush restaurant for three years, stated that if the alleged incident occurred on a Friday, then he would have been there because he normally worked Fridays. He did not recall an incident on May 2, 2003 where plaintiff had fallen while carrying a load of glasses. However, Mr. Hartsock was able to recall plaintiff coming into the restaurant with doctor's notes indicating that she needed to be out of work. He spoke with the plaintiff on these occasions regarding her ankle. The plaintiff told him that the doctor said she had tendinitis in her ankle.
6. Mr. Hartsock specifically asked plaintiff what was wrong with her ankle and whether it was work-related. She had always told him that it was not work-related. It was not until November 2003 when she filed the workers' compensation claim that Mr. Hartsock became aware plaintiff was claiming an incident happened at work.
7. There was no reason for Mr. Hartsock not to file plaintiff's claim as he had two or three other workers compensation claims a year. Filing a workers' compensation claim would not have an effect on him in any way from the standpoint of performance evaluations or store profitability. Further, Mr. Hartsock testified that he would never have refused plaintiff permission to go to the doctor and there was no conspiracy at Sagebrush to fire all the people who plaintiff claimed had knowledge of the incident.
8. Plaintiff continued to work with Mr. Hartsock after the alleged incident for some 3 months and not once during that time did she tell him that she had a workers' compensation claim that she needed to report.
9. Mr. Hartsock also recalled that before plaintiff filed the workers' compensation claim, she had filed an EEOC charge against the restaurant. Though Sagebrush was exonerated, he had the feeling that plaintiff had an ax to grind with the company.
10. Mr. Hartsock thought plaintiff may have "fallen in" with two other employees at the restaurant who were disgruntled as all three filed EEOC charges at the same time. However, he did say that before plaintiff became involved with these other employees, plaintiff and he had a close relationship and he had helped support her and her family through the difficult time she was having raising two children without any support.
11. Mr. Hartsock was asked about Mr. Blakeney's position of assistant manager and his responsibilities. Mr. Hartsock testified that Mr. Blakeney's responsibilities were the same as his and that he was equally able to file a workers' compensation claim, yet he did not. Further, Mr. Blakeney never approached Mr. Hartsock about filing a workers' compensation claim or going to the doctor with plaintiff. Mr. Blakeney no longer worked for Sagebrush as he had been fired for partying with employees at hotels and for failing a drug test during a workers' compensation incident.
12. Mr. Lawrence Grant, who worked at Sagebrush as a cook and shift leader for three years and who would have been working in May 2003, stated that he did not recall an incident where plaintiff dropped a rack of glasses and injured her foot. Mr. Grant testified that he was not scared or intimidated about telling the truth and that he was telling the truth both at the hearing and in his written statement.
13. Ms. Joyce Tiffany, who is the HR manager for Claremont Restaurant Group which owns Sagebrush, stated that on the date of the alleged incident the schedule indicated Mr. Blakeney was not working in the Stanleyville location, as he was covering the vacation of a manager at the Kernersville location.
14. Ms. Tiffany testified that Sagebrush employs approximately 1500 servers and that out of those 1500 servers she was not aware of any workers compensation claims for peroneal tendonitis.
15. On May 9, 2003, plaintiff presented for treatment to Dr. Kiss reporting left ankle pain. Medical records for that visit do not reference a fall in connection with the ankle pain.
16. Dr. Dallis began treating plaintiff on September 4, 2003, at which time she presented with four months of left ankle pain. The records and recollections of Dr. Dallis do not indicate any association of a fall or a twisting injury with this pain. Dr. Dallis diagnosed peroneal tendonitis in plaintiff's left ankle, which he concluded was more consistent with overuse than a twisting injury. However, the testimony of Dr. Dallis does not contain the required level of certitude to establish that plaintiff was at increased risk of developing peroneal tendonitis as a result of her employment in comparison with the general public or that her employment significantly contributed to the development of her peroneal tendonitis. Dr. Dallis last saw plaintiff on October 23, 2003.
17. Dr. King, who began treating plaintiff on November 20, 2003, diagnosed plaintiff with chronic posterior tibial tenosynovitis and tendonitis. He did not believe that overuse was a cause or significant contributing factor to the condition, as he attributed the condition to plaintiff's history to him of an alleged fall at work, the occurrence of which is herein found not to be credible.
18. Plaintiff's testimony regarding an alleged fall at work on or about May 2, 2003 is not accepted as credible. Thus, on May 2, 2003 plaintiff did not experience an interruption of her work routine resulting in an injury to her left ankle.
19. The greater weight of the expert medical evidence does not support plaintiff's claim that her peroneal tenosynovitis was causally connected to her employment whether as a result of an alleged fall or as a result of overuse as there is insufficient evidence of her job causing or significantly contributing to the development of her condition or that her job placed her at an increased risk than that of the general public of contracting this condition.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to establish that she suffered a compensable injury by accident on May 2, 2003. N.C. Gen. Stat. §97-2(6).
2. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed him or her to a greater risk of contracting the disease than the public generally. Ruthledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the disease's development. Hardinv. Motor Panels, Inc., 136 N.C. App. 351, 524 S.E.2d 368 (2000) (citing Ruthledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
(1983)). Where the condition may have been aggravated but not originally caused by the plaintiff's employment, a claimant must still show that the employment placed him or her at a greater risk for contracting or developing the condition. Futrell v.Resinall Corp., 357 N.C. 158, 579 S.E.2d 269 (2003). Plaintiff has failed to establish that he suffers from an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim must, under law, be and it is hereby DENIED.
2. Defendants shall pay the costs.
This the 8th day of February 2006.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER