* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS 1. Plaintiff is Beverly Lynn McKiver. *Page 2 
2. Defendant-Employer is Burlington Industries, Inc./International Textile Group, Inc. (now BII Liquidation, Inc., Trust, Administered by Avidity Partners) Defendant-Employer, Self-Insured.
3. Crawford Company is the servicing agent.
4. Defendant-Employer regularly employed three or more employees and was bound by the provisions of the North Carolina Workers' Compensation Act.
5. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
 * * * * * * * * * * * EXHIBITS
The following were marked and received into evidence as:
 a. Stipulated Exhibit Number 1, Pre-Trial Agreement
 b. Stipulated Exhibit Number 2, Industrial Commission Forms, Employment Records, and Medical Records
 c. Defendant's Exhibit Number 1, Provident Claim For Disability Benefits
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 40 years old and was a high graduate. Plaintiff had also completed one year of education at cosmetology school.
2. Plaintiff began working for Defendant-Employer in 1993, and worked for seven *Page 3 
years until March 16, 2000. Plaintiff was employed as a "bagger" or "labeler."
3. As part of her job duties with Defendant-Employer, Plaintiff pulled bags apart, lifted supplies out of boxes, moved supply boxes, placed drapes into bags, and taped bags. Her job duties required a lot of pulling, turning, picking and lifting. Plaintiff typically worked eight hours per day, 40 hours per week performing the same job duties during the entirety of her shift.
4. Plaintiff's position as a bagger/labeler was a production job, which required her to constantly keep moving to fill the bags with drapes to meet production. Beginning March 2000, Plaintiff testified that she began bagging a different product, Martha Stewart drapes. According to Plaintiff, this new product was more strenuous and tedious because the bagging process required the product to be double-bagged. Also, Plaintiff testified there were more supplies involved with the Martha Stewart drapes and the weight of the supply boxes were two to three times the weight of the previous supply boxes.
5. On or about March 13, 2000, Plaintiff began experiencing pain, with some burning and spasms in her right shoulder. Plaintiff continued to work through her pain until March 15, 2000, when she reported her symptoms to the occupational health nurse working at Defendant-Employer's plant. The occupational nurse, Debbie Hennessee, R.N., noted that Plaintiff did not report a specific injury or traumatic incident. Additionally, Plaintiff did not identify any changes in her work practices. Nurse Hennessee advised Plaintiff to take over-the-counter medication and to ice her shoulder to reduce the inflammation.
6. The next day, March 16, 2000, Plaintiff was unable to continue working due to the increased pain in her right shoulder. Plaintiff reported her pain to her supervisor, who advised her to see the plant nurse. Nurse Hennessee arranged for Plaintiff to see Dr. Hervy B. Kornegay, Sr., at Mt. Olive Family Medicine Center on that same day. *Page 4 
7. Plaintiff reported complaints of right shoulder and upper back pain with an onset four days prior. Dr. Kornegay noted that "[Plaintiff] first noticed it when she was doing some repetitive motion at work but denies any acute episode of pain." He diagnosed Plaintiff with right shoulder pain, secondary to trapezius muscle spasm. Dr. Kornegay prescribed medications and placed Plaintiff's right arm in a 90-degree sling. Plaintiff was written out of work from March 16, 2000 through March 17, 2000.
8. On March 27, 2000, Plaintiff returned to Dr. Kornegay with continued complaints of right shoulder pain. Plaintiff was provided a cortisone injection in the right shoulder and written out of work for another three days. On March 29, 2000, Dr. Kornegay referred Plaintiff to Dr. David Frederick, an orthopedic surgeon with Goldsboro Orthopedic Associates, for further evaluation.
9. On April 3, 2000, Plaintiff presented to Dr. Frederick with complaints of right shoulder pain for the past three weeks. Plaintiff reported she did not remember any type of accident, but her right shoulder pain became progressively worse. Dr. Frederick diagnosed right shoulder discomfort and prescribed a course of physical therapy and recommended Plaintiff apply heat to the shoulder. Dr. Frederick wrote Plaintiff out of work for three weeks until her next appointment.
10. On April 25, 2000, Plaintiff returned to Dr. Frederick after participating in physical therapy. Dr. Frederick injected her shoulder with Celestone and Xylocaine and recommended a progressive return to work for the next three weeks. Dr. Frederick's plan was for Plaintiff to return to regular duty work on May 10, 2000, after a couple of weeks of modified work with weight lifting restrictions.
11. Plaintiff did not return for her scheduled May 17, 2000 appointment with Dr. *Page 5 
Frederick, nor did she return to work. Plaintiff reported she had chosen to seek treatment with another physician, Joseph Democko, D.C. After two chiropractic treatments, Dr. Democko wrote Plaintiff out of work beginning May 4, 2000 through May 13, 2000. Dr. Democko referred Plaintiff for further evaluation and treatment with an orthopaedic surgeon, Henry L. Moss, M.D.
12. At his deposition, Dr. Frederick testified that the Plaintiff could not connect her symptoms to any specific injury or accident during her initial visit, and further, that it is his usual practice to inquire of patients whether something specific might have caused their symptoms. Dr. Frederick opined that barring any pre-existing condition, a repetitive, production type job would increase an employee's chances over the general public of having shoulder problems similar to Plaintiff. However, Dr. Frederick was unable to answer whether the type of shoulder condition Plaintiff has is more likely than not related to her repetitive work. In addition, Dr. Frederick was unable to express an opinion regarding whether Plaintiff has any permanent impairment as a result of her condition.
13. Plaintiff applied for and received short-term disability benefits from March 17, 2000 to September 14, 2000, in the amount of $2,275.00. Documents completed in connection with Plaintiff's claim for short-term disability were introduced at the hearing before the Deputy Commissioner as Defendant's Exhibit No. 1. The short-term disability carrier provided Nurse Hennessee with a "Workers' Compensation Questionnaire" to complete. Nurse Hennessee completed the questionnaire, dated April 24, 2000, indicating that Plaintiff had not filed a workers' compensation claim, that Plaintiff reported no injury and this was not an occupational injury. These representations were made based on the history and information supplied by the Plaintiff. The "Claimant's Statement" portion of those documents, bearing Plaintiff's signature *Page 6 
and dated September 22, 2000, indicated that her condition was due to sickness and that no injury was identified. The "Employer's Statement" portion of those documents, dated October 23, 2000, also indicated that Plaintiff had not initiated a workers' compensation claim.
14. On May 12, 2000, Dr. Moss evaluated Plaintiff for complaints of right shoulder discomfort beginning March 16, 2000. After reviewing Plaintiff's x-rays, which revealed no bony abnormality, Dr. Moss directed her to participate in physical therapy, to wear a sling on the right arm on a regular basis, and prescribed pain medication. Dr. Moss diagnosed Plaintiff as having a tight muscle in the right shoulder.
15. On June 14, 2000, Plaintiff reported that physical therapy was providing some relief of her symptoms. Dr. Moss advised Plaintiff to continue with physical therapy and apply heat to her right shoulder. On June 28, 2000, Plaintiff reported slipping down some stairs at home and experiencing pain in her right shoulder when she attempted to catch her fall. Dr. Moss continued her present therapy and encouraged Plaintiff to stretch the right arm.
16. Plaintiff continued to receive conservative treatment from Dr. Moss. During the course of his treatment, Dr. Moss provided Plaintiff with several medical notes restricting her from working in any capacity beginning July 12, 2000.
17. On January 11, 2001, Plaintiff underwent an MRI, which revealed no abnormality. Plaintiff reported that the burning sensation in her right shoulder remained the same. Dr. Moss continued Plaintiff out of work. On April 5, 2001, after a course of unsuccessful conservative treatment, Dr. Moss noted that Plaintiff "is permanently and totally disabled due to right suprascapular nerve entrapment." There are no medical records, which explain the basis of Dr. Moss's opinion and his testimony was not taken by oral deposition. The Full Commission gives little weight to the disability determination of Dr. Moss in this case. *Page 7 
18. Plaintiff visited Maqsood Ahmed, M.D., at Rehabilitation Pain Management Associates on February 13, 2002. Dr. Ahmed noted that Plaintiff had no pain on diverting her attention and palpating her upper back and shoulder muscle. He found no muscle atrophy, muscle spasms or neurological problems. Dr. Ahmed felt that since Plaintiff had seen five different physicians without any objective findings, she should be able to return to work with some psychological counseling.
19. Plaintiff returned to Dr. Ahmed on July 2, 2002. Dr. Ahmed noted that Plaintiff's right shoulder pain had significant psychoemotional overlay. He opined that she might benefit from pain medication, a trigger-point injection, vocational rehabilitation and cognitive behavior management. He noted that Plaintiff had an MRI, which does not show entrapment, but otherwise she was a young, healthy female and should be able to return to work with treatment.
20. Plaintiff has not returned to any employment following her last day of work with Defendant-Employer on March 16, 2000.
21. Plaintiff testified that she did not file a Form 18 to initiate a workers' compensation claim in this matter until July 30, 2001, because the plant nurse represented to her that the condition was not work related. Additionally, Plaintiff testified that she was unfamiliar with the process for filing a workers' compensation claim, and that representatives of Defendant-Employer assisted her in completing workers' compensation forms for a previous injury to her right forearm in 1996. Plaintiff acknowledged signing the "Claimant's Statement" in connection with her application for short-term disability which is indicated that her condition was due to sickness and that she could not identify an injury. The Form 18, dated July 30, 2001, was the first written notice given to Defendant-Employer that Plaintiff believed her condition was work-related. *Page 8 
22. The Full Commission finds from the greater weight of the competent, credible evidence, that Plaintiff has failed to prove that she sustained an injury by accident arising out of and in the course of her employment on or about March 16, 2000 as alleged, or at any other time. Plaintiff did not report that she sustained an injury at work or note any changes in her working conditions when she sought treatment with the company nurse on March 15, 2000 and March 16, 2000. Plaintiff completed a workers compensation questionnaire affirmatively indicating that her injury was not work related. In addition, Plaintiff did not report that her injury or condition was work-related during any of her initial doctor visits.
23. Based on the greater weight of the evidence, the Full Commission finds that Plaintiff's right shoulder condition was not due to a compensable occupational disease. Plaintiff has not proven that her job duties with Defendant-Employer caused her right shoulder condition, placed her at an increased risk for developing her right shoulder condition, or that her job duties aggravated, accelerated or significantly contributed to the development of her condition. Dr. Frederick opined that barring any pre-existing condition, a repetitive, production type job would increase an employee's chances over the general public of having shoulder problems similar to Plaintiff. However, Dr. Frederick was unable to answer whether the type of shoulder condition Plaintiff has is more likely than not related to her work.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following: *Page 9 
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of the employment. Henry v.Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950).
3. Plaintiff has failed to prove by the greater weight of the competent, credible evidence that she sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer on or about March 16, 2000 or at any other time. N.C. Gen. Stat. § 97-2(6).
4. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed him or her to a greater risk of contracting the disease than the public generally.Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the disease's development. Hardin v. Motor Panels, Inc., 136 N.C. App. 351,524 S.E.2d 368 (2000), citing Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983). Even where the condition was aggravated but not originally caused by the claimant's employment, a claimant must show that the employment placed him at a greater risk for contracting or developing the condition. Futrell v. Resinall Corp., 357 N.C. 158,579 S.E.2d 269 (2003).
5. Plaintiff has failed to prove that she developed an occupational disease as a result of her employment with Defendant-Employer. N.C. Gen. Stat. § 97-53. *Page 10 
6. Plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-1 (et seq.).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation is hereby DENIED.
2. Each side shall bear its own cost.
This the __ day of June 2007.
S/___________________________ BERNADINE S. BALANCE COMMISSIONER
CONCURRING:
 S/___________________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________________ PAMELA T. YOUNG COMMISSIONER *Page 1