***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Glenn and enters the following Opinion and Award.
 ***********
Following the hearing in this matter, plaintiff made a motion to reopen the case for further testimony. In the discretion of the Full Commission, this motion is DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All the parties are properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all times relevant herein.
3. Defendant-employer was an approved self-insured as to workers' compensation coverage at all relevant times herein.
4. Plaintiff's average weekly wages were $520.19 per week, yielding a compensation rate of $346.81 per week at all relevant times herein.
5. The parties tendered a pretrial agreement. At the hearing the parties stipulated to the following:
 • Stipulation #1 — Medical Records, 17 pages;
 • Stipulation #2 — Industrial Commission Forms, 11 pages.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 49-year old woman and mother of 12-year old twins. She graduated from high school in 1974 and is right hand dominant. *Page 3 
2. In 1979 plaintiff began working for the defendant City of Winston-Salem. In or about 1981 plaintiff began working for defendant in the capacity of a parking lot attendant/cashier which position she has continued to perform for about 25 years through the March 31, 2006 hearing date. Plaintiff normally worked about 8 hours each workday, 5 days a week, for about 45 weeks per year.
3. In the period 1981 through 1986 plaintiff worked 2nd
shift from 3 to 11:00 p.m. as the sole parking attendant/cashier at the City's downtown Cherry-Marshall parking deck where hotels are located. In the period 1986 into 1995 plaintiff worked 2nd shift at this parking deck, along with another attendant/cashier. In the period 1995 through the hearing date she worked at the City Hall parking lot.
4. In or about 1985 plaintiff first noticed right wrist pain, numbness and tingling.
5. In or about December 1993 plaintiff complained of bilateral hand numbness, which began near the end of her pregnancy in December 1993. Plaintiff missed work for about 6 months in early 1994 following the birth of her children.
6. In 1997 and 2001 plaintiff saw her primary care physician Dr. Jones, complaining of primarily right wrist pain for which Dr. Jones prescribed a wrist splint.
7. In late December 2004, plaintiff returned to Dr. Jones, who referred plaintiff to neurologist G. Frank Crowell for nerve conduction studies of her right median nerve.
8. On December 16, 2004 plaintiff saw Dr. Crowell to whom she reported a five year history of right hand numbness, weakness and paresthesia which had become much worse over the last two years, and that she performed repetitive work duties with her hands. Dr. Crowell interpreted the nerve conduction study and his clinical testing to reveal that plaintiff had right carpal tunnel syndrome for which she should consider having decompression surgery. *Page 4 
9. In May 2005 plaintiff returned to see Dr. Jones who diagnosed plaintiff with bilateral carpal tunnel syndrome, for which he prescribed bilateral wrist splints and medication.
10. On June 6, 2005 defendant referred plaintiff to PrimeCare where she saw physician's assistant Ken Bush. Plaintiff informed Mr. Bush that she had bilateral hand pain, right worse than left, and that she had worked as a "toll collector" for over 20 years. Her pain was at an 8 out of 0-10 pain scale. Following examination, PA Bush diagnosed bilateral wrist pain.
11. On or about June 8, 2005, plaintiff filed a Form 18 with defendant claiming carpal tunnel syndrome as a result of her work activities.
12. On June 13, 2005 plaintiff returned to PA Bush who prescribed nerve conduction studies of plaintiff's left wrist and referral to a hand specialist for repair of plaintiff's right carpal tunnel syndrome. Mr. Bush opined that plaintiff's bilateral carpal tunnel syndrome condition was consistent with a work-related injury. Mr. Bush suggested that plaintiff continue working with no repetitive use of either wrist and continue wearing wrist splints.
13. Plaintiff continued performing her regular duties for defendant
14. On February 23, 2006 plaintiff saw hand specialist Dr. Anthony DeFranzo who prescribed current nerve conduction studies of her wrists.
15. On March 13, 2006 neurologist Francis Walker interpreted nerve studies to reveal that plaintiff's right median nerve motor latency was now worse compared to similar testing in December 2004. Dr. Walker also interpreted plaintiff's left median nerve latency to be impaired. Dr. Walker concluded the studies showed that plaintiff has "moderate severe bilateral" carpal tunnel syndrome. *Page 5 
16. On March 16, 2006 plaintiff returned to see Dr. DeFranzo who prescribed carpal tunnel releases, the right first, then the left.
17. Plaintiff's position with defendant as a parking attendant involves attending to approximately 80 cars per day, spending 2-3 minutes with each customer. Plaintiff testified in detail regarding the motions made during each transaction. Plaintiff receives money in one hand and presses buttons with the other, thereafter returning the change to the customer.
18. Plaintiff is allowed breaks, and when she is not attending customers she can watch television or read, as well as leave her booth to use the restroom or take a food break.
19. Plaintiff's supervisor, Johnny Owens, testified that plaintiff's transactions were limited to 2-3 minutes. Mr. Owens testified that plaintiff had never complained of problems with her hands prior to filing her Form 18 in this matter.
20. Although plaintiff's treating physician, Dr. DeFranzo testified that he believed plaintiff's carpal tunnel syndrome is related to her employment, the hypothetical presented to Dr. DeFranzo at his deposition was inconsistent with the facts presented in this case. The greater weight of the evidence shows that plaintiff was not performing repetitive work for 5-6 hours per day. Dr. DeFranzo admitted that his opinion was based solely on the unsubstantiated description of job responsibilities provided by plaintiff and that he had not reviewed the job description or any other objective evidence related to her work duties. The statement of assumed facts includes inaccurate information.
21. Dr. DeFranzo admitted during his deposition, when presented with a description of job duties consistent with those found as fact herein, that plaintiff's job duties may have been an aggravating factor of her existing carpal tunnel syndrome as opposed to having a causal relationship. *Page 6 
22. Based on a review of the evidence as a whole, plaintiff has failed to prove that her bilateral carpal tunnel syndrome is related to her employment with defendant. At most, the job duties may have had an aggravating effect on her existing carpal tunnel syndrome.
23. Plaintiff has failed to prove that her employment placed her at increased risk of developing carpal tunnel syndrome.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed him or her to a greater risk of contracting the disease than the public generally.Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the disease's development. Hardin v. Motor Panels, Inc., 136 N.C. App. 351,524 S.E.2d 368 (2000) (citing Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983).
2. Even where the condition was aggravated but not originally caused by the claimant's employment, a claimant must show that the employment placed him at a greater risk for contracting or developing the condition. Futrell v. Resinall Corp., 357 N.C. 158, 579 S.E.2d 269
(2003). Accordingly, plaintiff has failed to establish that she suffers from an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13).
 *********** *Page 7 
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim must be, and is hereby, DENIED.
2. Each side shall pay its own costs.
This the 23rd day of August, 2007.
S/________________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/________________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1