***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. The Hartford was the carrier on the risk for Employer-Defendant.
5. Plaintiff alleges to have sustained a compensable injury on May 5, 2009.
6. An employee-employer relationship existed between the parties at all relevant times.
7. Plaintiff's average weekly wage was $312.00.
 *********** EXHIBITS
The following exhibits were admitted into evidence before the Deputy Commissioner:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Indexed Set of Paginated Exhibits
 *********** ISSUES (a) Whether Plaintiff's carpal tunnel syndrome is a compensable occupational disease?
 (b) If so, to what benefits, if any, is Plaintiff entitled?
 *********** *Page 3 
Based upon the preponderance of the evidence in view of the entire record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 57 years old as of the date of the hearing before the Deputy Commissioner. Prior to working for Defendant-Employer, Plaintiff worked as a workers' compensation insurance adjuster. In that capacity, Plaintiff used a computer full time.
2. Plaintiff was employed as a server at Defendant-Employer's restaurant from March of 2008 until May 5, 2009, with a gap in employment from early June through the end of October of 2008. Plaintiff, on average, worked three to four days per week, and her work hours were typically from 8:00 until 2:00 or 3:00.
3. Plaintiff's work duties included folding napkins, rolling towels for the restroom, fetching ice, setting tables, preparing tea, and serving customers. While serving customers, Plaintiff carried stoneware dishes by holding her palms up and her wrists straight.
4. Servers, including Plaintiff, were also responsible for clearing tables and cleaning up the dining area, putting away glasses and cups after they were washed and polishing silver after it was washed to remove water spots.
5. All duties were shared with at least two other servers, and no individual server performed any one duty all of the time.
6. Plaintiff's hobbies include baking, cross stitching, gardening, and making crafts and jewelry. Plaintiff engaged in these activities while she worked for Defendant-Employer, and Christmas ornaments and jewelry made by Plaintiff were offered for sale at Defendant-Employer's gift shop. *Page 4 
7. Plaintiff also attempted to start side businesses around March or April of 2009. These businesses involved baking and making paper crafts which required the use of Plaintiff's hands and fine finger manipulation.
8. Plaintiff testified that she did not work for Defendant-Employer from early June of 2008 until the end of October, 2008. She further testified that she worked a "couple of days" in October and a total of nine days during the month of November 2008. Plaintiff testified that she first began experiencing symptoms in her hands around Thanksgiving Day in 2008. Despite the onset of symptoms in November of 2008, Plaintiff did not seek medical treatment until May of 2009. At that time, Plaintiff presented to her family physician, Dr. Karl Barkley, who ordered a nerve conduction study which showed "moderate to severe changes." Plaintiff was diagnosed with bilateral carpal tunnel syndrome and referred to a hand and wrist specialist.
9. Plaintiff presented to orthopedic and hand surgeon, Dr. John Gaul, on July 9, 2009, at which time she reported that she had experienced symptoms for approximately eight months. Dr. Gaul confirmed Plaintiff's bilateral carpal tunnel syndrome diagnosis and recommended surgery, which Dr. Gaul performed on Plaintiff's left hand on July 29, 2009. Plaintiff received an injection to her right wrist, but did not undergo surgery on that side.
10. Plaintiff experienced significant improvement in her symptoms following her treatment with Dr. Gaul, and on November 10, 2009, Dr. Gaul released Plaintiff from his care with no work restrictions. Plaintiff was issued a permanent partial impairment rating of 5% to her right hand and 10% to her left hand. Plaintiff has not sought any additional treatment since her release from Dr. Gaul's care.
11. Dr. Gaul opined that, while most carpal tunnel syndrome is idiopathic in nature, some causes that have been identified are repetitive activities, forceful gripping over time, *Page 5 
maintaining awkward hand positions, pregnancy, arthritis, diabetes and increased fluid retention. Dr. Gaul also opined that carpal tunnel syndrome is more common in women.
12. With respect to Plaintiff's activities as a server, Dr. Gaul testified that he does not see many servers with carpal tunnel syndrome, and he opined that carrying things with the palms facing up lowers the risk for the development of carpal tunnel syndrome.
13. With respect to Plaintiff's activities outside her work as a server, Dr. Gaul opined that there was some relationship between computer work and the development of carpal tunnel syndrome, although that association was not "cut and dry." He did, however, opine that there was a definite relationship between needle point and other fine motor activities, and that this relationship would be based on the frequency of the activity.
14. Dr. Gaul could not relate Plaintiff's carpal tunnel syndrome to her employment with Defendant-Employer to a reasonable degree of medical certainty, nor did he testify that Plaintiff's employment with Defendant-Employer placed her at increased risk of developing carpal tunnel syndrome.
 ***********
Based on the foregoing stipulations, and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed her to a greater risk of contracting the disease than the public generally. Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to or was a *Page 6 
significant causal factor in the development of the disease.Rutledge v. Tultex Corp., supra; Hardin v. Motor Panels, Inc.,136 N.C. App. 351, 524 S.E.2d 368 (2000).
2. In the present case, Plaintiff has failed to prove by the preponderance of the evidence that her employment with Defendant-Employer caused or was a significant contributing factor in her development of carpal tunnel syndrome, that the carpal tunnel syndrome was characteristic of or peculiar to her employment, or that she was at an increased risk of developing this condition due to her work. Hansel v. Sherman Textiles,304 N.C. 33, 283 S.E.2d 101 (1981).
3. Therefore, Plaintiff did not contract an occupational disease, specifically, bilateral carpal tunnel syndrome, within the meaning of the law. N.C. Gen. Stat. § 97-53(13).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of November, 2011.
 S/______________ LINDA CHEATHAM COMMISSIONER
CONCURRING: *Page 7 
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________________ TAMMY R. NANCE COMMISSIONER *Page 1