***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. Key Risk Insurance Company is the carrier on the risk for defendant-employer.
4. Plaintiff's average weekly wage is $456.54 per week, yielding a compensation rate of $304.38.
5. Defendants admit plaintiff started missing time from work because of her occupational disease on or about May 10, 2006.
6. Defendants contend they admitted plaintiff's right middle trigger finger as a medical only claim and accepted the left hand triggering on a Form 63 dated August 8, 2006.
7. At the Deputy Commissioner's hearing, Stipulated Exhibit Number 1, consisting of the Pre-Trial Agreement, Medical Records, Industrial Commission Forms, was admitted into evidence.
8. The issues before the Commission are whether plaintiff sustained an occupational disease of carpal tunnel syndrome on or about February 7, 2008, and if so, what benefits she is entitled to receive.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed with defendant-employer as a canvas cutter/picture mounter. In this position, plaintiff measured the canvas to fit different frames, cut the canvas to *Page 3 
fit the frames, painted the canvas with a roller, placed glue on the picture to put it on the canvas, used a roller to spread enamel on the canvas and used a press to ensure the picture remained flat on the canvas.
2. In September 2000, plaintiff came under the care of Dr. Christopher Lechner, an orthopaedic surgeon, for right middle trigger finger. Plaintiff returned to Dr. Lechner throughout 2001 with complaints regarding her right middle finger.
3. On December 28, 2004, Dr. Timothy Kirkland evaluated plaintiff for her right middle trigger finger. On June 23, 2005, Dr. Kirkland performed right middle finger A1 pulley release surgery. Defendants accepted liability for plaintiff's right middle trigger finger, which has been assigned I.C. File Number 527781.
4. On August 24, 2005, plaintiff presented to Dr. Kirkland with complaints of right hand pain and some occasional tingling in her middle and ring finger. Dr. Kirkland performed a Tinel's test at the wrist, which was negative. Upon further examination of plaintiff's hand, Dr. Kirkland noted there was no evidence of carpal tunnel syndrome.
5. On May 10, 2006, plaintiff and two other employees were laid off from defendant-employer. Plaintiff received 26 weeks of unemployment benefits after the layoff.
6. Following her release from employment, plaintiff reported left hand problems, specifically, triggering of the third and fourth digits of the left hand. Plaintiff was examined by Bill Vaassen, PA-C. Tinel's, Phalen's and Finkelstein tests conducted by Mr. Vaassen were all negative.
7. On September 7, 2006, plaintiff returned to Dr. Lechner with complaints of pain in her left middle finger, right ring and small finger, but no complaints of tingling or numbness in either hand. Both Tinel's and Phalen's tests were negative. Dr. Lechner noted that plaintiff *Page 4 
suffered from both diabetes and arthritis. On March 8, 2007, Dr. Lechner assigned a 25% permanent partial disability rating to plaintiff's right middle finger and a 0% permanent partial disability rating to her left hand. Dr. Lechner released plaintiff to return to full duty work with no restrictions.
8. In April 2007, plaintiff obtained a job working as a secretary/cashier at a food distribution center. Plaintiff works four hours a day, five days a week and earns $6.15 per hour.
9. On November 15, 2007, plaintiff returned to Dr. Lechner for stiffness and pain in her hands, which he related to her arthritis.
10. On February 7, 2008, approximately one and a half years after plaintiff's last date of employment with defendant-employer, she presented to Dr. Anthony Defranzo, a plastic reconstructive hand surgeon, for a second opinion on her condition. Plaintiff reported numbness in both hands. After a positive Phalen's test, Dr. Defranzo diagnosed plaintiff with bilateral carpal tunnel syndrome. A nerve conduction study confirmed the diagnosis, finding the condition worse on the right than the left. Dr. Defranzo recommended a carpal tunnel release of plaintiff's right hand.
11. Dr. Lechner testified that plaintiff has many factors making her a candidate for the development of carpal tunnel syndrome, including her age, diabetes and arthritis. Dr. Lechner opined that because plaintiff's bilateral carpal tunnel condition developed approximately one and a half years following her employment, it was very difficult to place the cause of plaintiff's carpal tunnel syndrome on her job duties with defendant-employer.
12. Dr. Defranzo opined that he was 100% confident that plaintiff's job with defendant-employer was a substantial causative factor in the development of her bilateral carpal *Page 5 
tunnel syndrome. He further opined that plaintiff's job placed her at a greater risk of developing bilateral carpal tunnel syndrome than the general population not so employed.
13. Mr. Vaassen, who also treated plaintiff, testified that he was 90% certain that plaintiff's job duties with defendant-employer were a substantial causative factor in the development of her trigger finger condition and that her employment with defendant-employer placed her at a greater risk than the general public not so employed to developing a trigger finger condition. Mr. Vaassen did not render an opinion regarding the causation of plaintiff's carpal tunnel syndrome.
14. Alan Gorrod, occupational therapist and ergonomic consultant, testified that in the last five years plaintiff worked for defendant-employer, she performed four main tasks of rolling, placing, cutting and moving canvas. Mr. Gorrod stated that there was no ergonomic risk factors present in plaintiff's job duties and that a majority of her work was performed with one hand, which would not contribute toward any bilateral hand and wrist problems.
15. After a review of the competent medical records, the testimony of record and the opinions expressed by the experts, the Commission gives greater weight to the medical opinions of Dr. Lechner who treated plaintiff from 2000 through 2006 with regards to the causal connection between plaintiff's bilateral carpal tunnel syndrome and her employment with defendant-employer.
15. The Commission finds that plaintiff failed to establish by competent medical evidence that her bilateral carpal tunnel syndrome was caused by or significantly contributed to by her job duties with defendant-employer. Plaintiff also failed to establish by competent medical evidence that her job duties with defendant-employer placed her at an increased risk of *Page 6 
developing bilateral carpal tunnel syndrome as compared to members of the general public not so employed.
16. Plaintiff failed to establish that any ongoing disability or loss of earning capacity was the result of her compensable trigger finger condition.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed her to a greater risk of contracting the disease than the public generally.Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the development of the disease. Hardin v. Motor Panels, Inc., 136 N.C. App. 351,524 S.E.2d 368, disc. rev. denied, 351 N.C. 473, 543 S.E.2d 488 (2000). Where the condition was aggravated but not originally caused by the claimant's employment, a claimant must show that the employment placed her at a greater risk for contracting or developing the condition.Futrell v. Resinall Corp., 151 N.C.App. 456, 566 S.E.2d 181 (2002),aff'd per curiam, 357 N.C. 158, 579 S.E.2d 269 (2003); Norris v. DrexelHeritage Furnishings, Inc., 139 N.C.App. 620, 534 S.E.2d 259 (2000),cert. denied, 353 N.C. 378, 547 S.E.2d 15 (2001).
2. In this case, plaintiff failed to prove by the greater weight of the evidence that her bilateral carpal tunnel syndrome was caused by or significantly contributed to by her job duties with defendant-employer. Plaintiff also failed to prove by the greater weight of the evidence that *Page 7 
her employment placed her at an increased risk of developing carpal tunnel syndrome as compared to members of the general public not so employed. N.C. Gen. Stat. § 97-53(13).
3. Any ongoing disability or inability to earn wages plaintiff may have had subsequent to her release to return to full duty employment is not the result of or related to her compensable trigger finger condition. N.C. Gen. Stat. § 97-29; Russell v. Lowe's Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. As a result of her compensable occupational disease to her right middle trigger finger, plaintiff sustained a 25% permanent partial disability to the right middle finger. N.C. Gen. Stat. § 97-31(3).
 *********** *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits for bilateral carpal tunnel syndrome is HEREBY DENIED.
2. Subject to a reasonable attorney's fee approved below, defendants shall pay plaintiff permanent partial disability compensation for the 25% impairment to her right middle finger at the rate of $304.38 for 10 weeks.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 2 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Each side shall pay their costs.
This 20th day of May, 2009. *Page 8 
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1