DIANE L. DUFFY, Employee, Plaintiff,
v.
HANESBRANDS, INC. (formerly SARA LEE CORPORATION) Employer, and INDEMNITY COMPANY OF NORTH AMERICA, Carrier (ESIS, Administrator), Defendants
No. COA08-1247
Court of Appeals of North Carolina
Filed September 1, 2009
This case not for Publication
Elliot Pishko Morgan, P.A., by J. Griffin Morgan and Helen L. Parsonage, for plaintiff.
Orbock Ruark & Dillard, PA, by Barbara E. Ruark, for defendants.
ELMORE, Judge.
Diane Duffy (plaintiff) worked for Tultex Corporation (Tultex) as a sewing machinist for more than twenty-five years. She then began work at Sara Lee Corporation (Sara Lee), whose insurance carrier is ESIS (collectively, defendants). During her work with Sara Lee, plaintiff began experiencing numbness in her fingers, a weakened grip, and other problems with her hands and arms. Industrial Commission Deputy Commissioner George Glenn II found that plaintiff was entitled to $704.00 per week in disability benefits. Defendants appealed to the Full Commission (Commission), which affirmed Commissioner Glenn's opinion and award. Defendants appeal that award to this Court.

FACTS
Plaintiff worked for Tultex from 1974 to 2000 as a sewing machine operator and sewing instructor. While working as a sewing machine operator, plaintiff frequently sewed over 7,500 pant legs during each shift. A typical shift would involve over 10,000 pinches with the left hand, over 2,000 pinches with the right hand, and over 2,000 scissor clips with the right hand. Plaintiff left Tultex in 2000 when the company closed.
Plaintiff then began work at Sara Lee, where she worked as a Training Technical Engineer. Her duties included spending ten to twelve hours per day training employees in factories around the world and repeatedly demonstrating the same sewing procedures until the trainees were proficient. After about a year training employees on a one-step waistband machine, plaintiff began noticing numbness in her fingers, the sensation of an electric shock going up her arm, and a weakened grip. Plaintiff experienced the same hand and arm problems three years later when she was working on the same waistband machine. Plaintiff also worked on a zipper machine that required continued twisting and folding of the fabric in order to force the fabric and zipper through the machine.
In 2005, plaintiff went to Dr. Hugh Hagan, an orthopedic surgeon in Roanoke, Virginia. Dr. Hagan diagnosed her with bilateral carpal tunnel syndrome (CTS) and performed surgery on plaintiff's left hand on 5 October 2005, and on plaintiff's right hand on 21 April 2006. During this time, Dr. Hagan kept plaintiff out of work; plaintiff experienced continued unremitting pain, and so Dr. Hagan kept plaintiff out of work indefinitely.
On 23 January 2006, plaintiff filed a claim with the Industrial Commission seeking workers' compensation from defendants, who denied the claim. Plaintiff then requested a hearing, which was brought before Deputy Commissioner Glenn. Glenn awarded plaintiff $704.00 per week in disability benefits. Defendants appealed to the Full Commission, which on 10 June 2008 filed an opinion and award granting plaintiff benefits. The Full Commission filed an amended opinion and award on 7 August 2008 granting plaintiff benefits and correcting typographical errors. Defendants then appealed to this Court, pursuant to N.C. Gen. Stat. § 97-86. For the reasons stated below, we affirm the Full Commission's opinion and award.

ARGUMENTS

I.
Defendants argue that there is not competent evidence supporting the Commission's findings that (1) plaintiff's employment exposed her to a greater risk of contracting CTS than the general public and (2) plaintiff's employment with Sara Lee caused her CTS. We disagree.
We will affirm the Commission's findings of fact so long as there is competent evidence to support them, even if there is evidence to the contrary. Hardin v. Motor Panels, Inc., 136 N.C. App. 351, 353, 524 S.E.2d 368, 371 (2000).
North Carolina Gen. Stat. § 97-57 provides that a defendant-employer "is liable to an employee for an occupational disease if the employee demonstrates that she (1) suffers from a compensable occupational disease and (2) was last injuriously exposed to the hazards of such disease while employed by" the defendant-employer. Id. at 354, 524 S.E.2d at 371; N.C. Gen. Stat. § 97-57 (2007).
Defendants argue that it was plaintiff's burden to establish "(1) that her employment with Defendant-Employer exposed her to a greater risk of contracting her disease than the general public, and (2) [that p]laintiff's exposure significantly contributed to or was a significant causal factor in the development of her disease." Defendants argue that plaintiff's CTS was primarily caused by her work with Tultex, meaning that defendants should not be liable for plaintiff's workers' compensation benefits.
Supporting their proposition that the injuries must have been significantly caused by plaintiff's employment with Sara Lee for defendants to be liable, defendants cite Rutledge v. Tultex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). However, Rutledge did not include the language defendants emphasize above  that "employment with Defendant-Employer" must have "significantly contributed" or been a "significant causal factor" for plaintiff's injuries  but in fact follows the language of N.C. Gen. § 97-57, saying:
it is not necessary that claimant show that the conditions of her employment with defendant caused or significantly contributed to her occupational disease. She need only show: (1) that she has a compensable occupational disease and (2) that she was last injuriously exposed to the hazards of such disease in defendant's employment.
Id. at 89, 301 S.E.2d at 362 (quoting N.C. Gen. Stat. § 97-57). As such, plaintiff needed only to show (1) that CTS is a compensable occupational disease and (2) that she was last injuriously exposed to the hazards of CTS while employed by Sara Lee.
CTS is not listed among the compensable occupational diseases under N.C. Gen. Stat. § 97-53, but a disease or condition not specifically enumerated in the statute may nonetheless qualify as an occupational disease if
(1) [the disease is] characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) [the disease is] not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there [is] a causal connection between the disease and the [claimant's] employment.
Id. at 93, 301 S.E.2d at 365 (quotations and citation omitted; alteration in original). When questioned about whether plaintiff's thirty-year employment in the sewing industry "exposed her to a greater risk of suffering from [CTS]" than the public generally, Dr. Hagan testified: "Yes. Based upon the description of her work, the forceful and repetitive nature of a lot of the things that she did; yes, I feel that it did contribute to it." As such, Dr. Hagan's testimony provides competent evidence that CTS is a disease characteristic of a person engaged in plaintiff's line of work, that CTS is not an ordinary disease of life to which the public generally is equally exposed, and that there was a causal connection between plaintiff's CTS and her thirty-year employment in the sewing industry. Therefore, there was competent evidence supporting the Commission's decision that plaintiff had suffered a compensable occupational disease.
In order to collect workers' compensation from Sara Lee, the only other element plaintiff needed to show was that she was last injuriously exposed to the hazards of CTS in defendant's employment. Id. at 88-89, 301 S.E.2d at 362. "The statutory terms `last injuriously exposed' mean an exposure which proximately augmented the disease to any extent, however slight." Id. (quoting N.C. Gen. Stat. § 97-57; Haynes v. Feldspar Producing Company, 222 N.C. 163, 166, 169, 22 S.E.2d 275, 277, 278 (1942)) Given plaintiff's and Dr. Hagan's extensive testimony that plaintiff began experiencing pain as a result of training other workers on the one-step waistband machine while employed by Sara Lee, there was credible evidence that plaintiff was last injuriously exposed to the hazards of CTS while employed by Sara Lee.
While defendants point to Dr. Hagan's deposition testimony that plaintiff may have been suffering from "an underlying, undiagnosed medical condition that could have caused the swelling which led to [p]laintiff's CTS," we will affirm the Commission's findings of fact so long as there is competent evidence to support them, even if there is evidence to the contrary. Hardin, 136 N.C. App. at 353, 524 S.E.2d at 371. As discussed supra, there was indeed competent evidence supporting all elements required for plaintiff to collect workers' compensation for her CTS from defendants. Plaintiff did not need to show that her employment with Sara Lee was a significant factor that led to her CTS. Therefore, defendants' argument is overruled, and we affirm the Commission's decision that plaintiff suffered from a compensable occupational disease and that plaintiff was last injuriously exposed to the hazards of CTS during her employment with Sara Lee.

II.
Defendants argue that the Commission erred by failing to rule on defendants' motion to exclude a book offered into evidence at the deposition of Dr. Hagan on the grounds that the book was hearsay. We disagree.
We review the Commission's conclusions of law de novo. Deseth v. LensCrafters, Inc., 160 N.C. App. 180, 184, 585 S.E.2d 264, 267 (2003).
Defendants' only legal authority supporting their argument is that "N.C.I.C. Rule 609(5) states that Motions will be determined." However, the entirety of Rule 609(5) is that "[m]otions will be determined without oral argument, unless the Industrial Commission orders otherwise." Workers' Compensation Rules of the North Carolina Industrial Commission, Rule 609(5) (2007). The plain language of the rule indicates that there is no right to oral argument for motions.
Even if Rule 609(5) supported defendants' argument, the book is admissible as an exception to the hearsay rule because the portion of the book in question contains a study published by the National Institute for Occupational Safety and Health (NIOSH), which is an agency of the United States Department of Health and Human Services. See 29 U.S.C. § 651, et seq. Rule 803(8) of the North Carolina Rules of Evidence allows as admissible "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report[.]" N.C. Gen. Stat. § 8C-1, Rule 803(8) (2007). The study was titled "Musculoskeletal Disorders and Workplace Factors: A Critical Review of Epidemiologic Evidence for Work-Related Musculoskeletal Disorders of the Neck, Upper Extremity, and Low Back" and evaluates the relationship between work and the incidence of work-related musculoskeletal disorders such as CTS. As such, the book fell within Rule 803(8)'s hearsay exception as a matter that NIOSH observed pursuant to its duty to investigate occupational safety and health.
Therefore, whether or not the Commission properly ruled on defendants' motion is a moot question. If the book was admitted, Rule 803(8) allowed such admission as an exception to the hearsay rule; if the book was not admitted, then defendants suffered no harm. Defendants' argument is overruled.

III.
Defendants next argue that there is no competent evidence supporting the Commission's decision that plaintiff is disabled as a result of her CTS. We disagree.
We will affirm the Commission if its findings are supported by any competent evidence. Hardin, 136 N.C. App. at 353, 524 S.E.2d at 371. On 5 May 2006, Dr. Hagan stated: "I am going to keep [plaintiff] off work indefinitely. I just cannot imagine seeing her go back to work in this state." Dr. Hagan also stated on 28 July 2006 that "[m]y recommendation would be, realistically, I cannot anticipate [plaintiff] going back to any kind of heavy or repetitive labor with her hands, and I am going to just pull her off work indefinitely." Dr. Hagan also testified that plaintiff's CTS symptoms had improved, but "[w]hat didn't get well was the associated pain and inflammatory change. When I say that, I mean stiffness and touchiness and weakness and just a reluctance to be able to move in a supple fashion."
As such, there was competent evidence supporting the Commission's finding that plaintiff was disabled as a result of her CTS. Therefore, defendants' argument is overruled, and we affirm the Commission's finding that plaintiff was disabled as a result of her CTS.

IV.
For the reasons stated above, we overrule all of defendants' arguments and affirm the Commission's order and award. As such, we decline to review plaintiff's assignments of error, which are rendered moot by this Court's holding.
Affirmed.
Judge BRYANT concurs.
Judge STEELMAN concurs in the result only.
Report per Rule 30(e).